Argued January 9; reversed February 14; rehearing denied
March 5, 1940

# WIEDER *v.* LORENZ ET AL.

(99 P. (2d) 38)

12

Department 1.

Joseph McKeown, of Marshfield (Liljeqvist, Swanton & McKeown, of Marshfield, and A. W. Schaupp, of Klamath Falls, on the brief), for appellant.

Henry E. Perkins, of Klamath Falls (R. C. Groesbeck, of Klamath Falls, on the brief), for respondent.

ROSSMAN, J.   This is an appeal from an order of the circuit court which set aside a judgment, based upon a jury's verdict, in favor of the plaintiff (appellant). The order was made after the respondent Lorenz, one of the two defendants, had moved for a new trial. The basis of this action is an averment that October 20, 1931, the defendants promised to pay to the plaintiff $2,065.70 for a quantity of logs which he had delivered to a mill known as the Kitts mill. Before this action was begun the defendant Kitts had become a nonresident of this state, and had been adjudged a bankrupt. The answer of Lorenz contains admissions and denials but no affirmative defense. Therefore, the issue it presented was whether or not Lorenz had agreed to pay for the logs. The motion for a new trial claimed (a) that error was committed in the admission as evidence of twelve letters which had been written concern-

ing the alleged transaction; and (b) that after the entry of the judgment material testimony favorable to Lorenz was discovered. The order awarding the new trial does not state the reason which prompted its entry.

In 1931, the W. H. Kitts Lumber Company, which was not a corporation, operated a sawmill and box factory in Bonanza, which is about twenty-two miles east of Klamath Falls. Kitts, as a witness for Lorenz, testified that he was the sole owner of the plant. Lorenz swore that he owned no interest in the business. The plaintiff claimed that Lorenz and Kitts jointly owned the mill. In October, 1931, the plaintiff delivered to the mill 206,570 feet of logs. He swore that on October 20, 1931, Lorenz and Kitts agreed to purchase those logs and to pay for them $10 per thousand feet, or a total of $2,065.70. Neither quantity nor price is disputed. The sole issue at the trial was whether Lorenz, in addition to Kitts, promised to pay for the logs. The plaintiff, who is engaged in the timber business, resided in Marshfield. Lorenz, who described himself as engaged in "the lumber business and hardware and a little banking," was located in Klamath Falls. Kitts resided in Bonanza. We shall now review that part of the evidence which we deem essential to a determination of the admissibility of the challenged letters.

In March, 1930, Kitts, being unable to satisfy the demands of his creditors, of whom the plaintiff was one, signed an agreement with them which among other things subjected all of his property to a mortgage for the benefit of the creditors and assigned all of his accounts receivable for a like purpose. Lorenz became a member of the creditors' committee created under the agreement.

Lorenz testified that after the execution of the creditors' agreement "it became necessary for Mr. Kitts to obtain some financiers in order to carry on his operations," and that beginning July 24, 1930, he (Lorenz) financed Kitts' operations. From time to time, according to his testimony, he advanced money to Kitts and took as security chattel mortgages on the lumber produced by the mill. He also testified: "I got a hundred dollars a month for the work I did for him * * *. The money I got was for my trying to save the situation which otherwise was hopeless." Both Lorenz and Kitts denied that the former owned any interest whatever in the plant. Lorenz claimed that he was a creditor and nothing more.

We shall now review briefly the plaintiff's version of Lorenz' relationship to the mill. He swore that in 1931 Lorenz "was the business end, the financial end" of the mill and "was personally interested" in the venture. According to his testimony, Lorenz collected all accounts receivable due the mill and made all disbursements. He made the disbursements by his (Lorenz') check. The plaintiff further testified that whenever he sold logs to the mill he talked to both Lorenz and Kitts. Payments for the logs were made to him partly by check and partly in trade acceptances. Both were signed by Lorenz.

In October, 1931, the plaintiff owned the aforementioned logs and desired to sell them. For some time he had supplied the mill with logs. October 20, 1931, he Kitts and Lorenz held a meeting in the latter's office concerning the logs. The plaintiff swore that in the course of this meeting Lorenz and Kitts agreed to purchase the logs and pay for them $10 per thousand feet, one-third in cash November 15, 1931, one-third in trade

acceptances due in 60 days and the remaining third in trade acceptances payable in 120 days. He was positive that Lorenz agreed to endorse the trade acceptances, and swore that on all previous occasions payment had been made in the same manner. He would have refused to sell on Kitts' credit alone, so he testified. No payment for the logs has been made.

Lorenz admitted that the meeting described by the plaintiff took place, but denied that he purchased the logs or promised to pay for them. Kitts, as a witness for Lorenz, likewise admitted that the three met October 20. When asked, ''Was there a sale of the logs made at that time?'' he replied, ''I couldn't answer in the affirmative.'' He was also asked, ''Did Mr. Lorenz agree to buy the logs at that time?'' and answered, ''I wouldn't be in position to state that Mr. Lorenz had agreed to purchase those logs.''

It will thus be seen that in the meeting of October 20 the plaintiff swore that both defendants promised payment, Lorenz denied that he had agreed to pay, and Kitts ''couldn't say'' whether Lorenz had or had not promised payment. This situation no doubt caused the jury to attach importance to the letters exchanged by the parties; the trial judge received them as evidence. The admissibility of twelve of these letters was challenged not only by objections made at the time, but also by the motion for a new trial. We shall now describe them, but before doing so deem it necessary to add another circumstance to this recital of the facts.

In order to finance his logging operations the plaintiff had borrowed from the First National Bank of Marshfield, and in order to secure repayment had executed and delivered to the bank a mortgage upon his property. In the early part of 1932 he defaulted in the

discharge of his indebtedness to the bank and thereupon assigned to the latter all of his accounts receivable including the sums which he believed Lorenz owed him. This circumstance caused the bank to write to Lorenz and shortly several letters were exchanged by them. Some of these letters mentioned the October log account.

The plaintiff in Marshfield and Kitts in Bonanza wrote to each other several letters concerning the October log account. Several letters exchanged by the plaintiff and Lorenz mentioned the same subject. May 1, 1932, the plaintiff mailed to both Lorenz and Kitts a detailed statement showing their joint indebtedness to him; it included the charge for the October logs. The letters written by the plaintiff, Kitts, Lorenz and the bank total forty-seven; together with the statement of account the documents aggregate forty-eight. They were received as evidence (twenty-eight upon the offer of the plaintiff) for the purpose of showing whether or not Lorenz had bound himself to pay for the logs. The admissibility of only twelve of these forty-eight is challenged in the motion for a new trial.

The twelve challenged documents (eleven letters and one statement of account) may be identified thus: one was from the plaintiff to Kitts and Lorenz, one from the bank to Lorenz, one from the plaintiff to Lorenz, four from Kitts to the plaintiff, and five from the plaintiff to Kitts.

The plaintiff contends that the letters which he and Kitts exchanged were admissible because Lorenz and Kitts (so the plaintiff says) were jointly interested in the mill, or at least in the October log transaction. He contends that some of those letters contradicted the above-mentioned testimony which Kitts gave as a wit-

ness for Lorenz, and were therefore admissible for that purpose. He claims that Lorenz never questioned the verity of the statement of account which he mailed to Kitts and Lorenz May 1, 1932, and that therefore the statement was admissible. He argues that recitals contained in the bank's letters concerning the October log sale, not disputed in Lorenz' reply and subsequent letters, must be deemed admitted as true statements of the transaction, thus rendering the bank's letters admissible.

The first of the forty-eight documents was a letter written upon the letterhead of the W. H. Kitts Lumber Company, dated October 24, 1931, and signed by Kitts. It was accompanied by a statement showing that the Kitts Company was indebted to the plaintiff in the sum of $2,065.70 for 206,570 feet of logs purchased at the price of $10 per thousand feet. The letter stated, and the statement indicated, that the price was payable one-third on November 16, one-third in 60 days and one-third in 120 days; both of the latter sums to be evidenced by trade acceptances. The letter explained that since November 15 was a Sunday the first payment would be made on the 16th. The admissibility of that letter and statement is not challenged. The next letter which was received as evidence was written by Lorenz to the plaintiff. It mentioned an order upon Lorenz given by the plaintiff to one of his creditors and expressed Lorenz' willingness to make payment. In the remainder of the letter Lorenz stated that he desired to acquire at a discount all of the claims against Kitts secured by the mortgage which accompanied the creditors' agreement of March, 1930. The third letter was likewise from Lorenz to the plaintiff and concerned another item which the plaintiff had asked Lorenz to

pay and charge against Lorenz' indebtedness to the plaintiff. The admissibility of these three letters is not challenged. We mention them for the purpose of indicating the extent and nature of the transactions and correspondence between the parties.

November 17 the plaintiff wrote to Kitts a letter which was prompted by Kitts' letter of October 24. It is the first letter the admissibility of which is challenged, and is marked Exhibit E. In it the plaintiff stated:

"Your statement for October logs delivered by the writer 206570 ft. is OK. * * * The terms for the October logs which Lorenz, Kitts & Wieder agreed to, are as follows: * * * Will you have Mr. Lorenz send me his check which was due Nov 15/31 for 33 1/3 of $2065.70.. $688.70. Also send me the two T.S.'s dated Nov 15/31 for 60 days and 120 days each $688.50 endorsed by Mr. Lorenz. * * * My bank here will not help me next year to finance any logging for your mill and factory, as this year's moneys have not been paid when due, as per agreed by yourself and Mr. Lorenz, before I opened camp."

November 23 Kitts replied (Exhibit H), saying among other things:

"Mr. Lorenz has been in California trying to make something out of the Clark-Tiernlund affair and has not returned yet. We trust that you can get along until he returns, at which time we will take up the matter with him. * * * We hope by the time Mr. Lorenz returns and we have the acceptances made out that * * *."

This letter contradicted nothing set forth in the plaintiff's letter of November 17.

November 28, the plaintiff, in a letter to Kitts (Exhibit I) which acknowledged receipt of Kitts' letter of November 23, said:

"I hope you will have Mr. Lorenz tend to the October log account at once. * * * I believe if Lorenz would pay me for 1931 logs as per our agreement * * * I can get the bank here to * * *."

December 7 the plaintiff having received no reply to the letter just mentioned wrote to Kitts again (Exhibit J); he said:

"It has been ten days since I wrote you Nov 28/31. Is there nothing you can do with G. C. Lorenz so I can satisfy the bank * * *. Kindly answer my letter of Nov 28/31 and this date at your very earliest convenience, and send me trade acceptance for October, which were due me Nov 15/31, with 1/3 cash for October logs * * *."

The two letters were not answered.

March 11, 1932, a letter (Exhibit M) was written to Lorenz upon the letterhead of the bank. It was signed "John Ferguson, Vice President." Lorenz' brief professes ignorance of the identity of Ferguson, but we observe that in three subsequent letters which Lorenz sent to the bank he made as a part of the salutation the following: "Attention: Mr. John Ferguson." Hence, we assume that he understood that the individual just mentioned had charge for the bank of the matter concerning which they were corresponding. Exhibit M seems to be the principal object of the defendants' attack. Its opening paragraph follows:

"Mr. Henry Wieder called today and showed us a telegram from W. H. Kitts asking for an extension of $1,000 for 30 days on his trade acceptance due March 15 amounting to $1,794.29, upon which you are endorser."

The material part of the letter follows:

"Nor have the trade acceptances for October logs been executed and delivered to Mr. Wieder as promised.

It is our understanding that these logs were to be covered by trade acceptances due one-third each in January, February and March. The total involved is approximately $2,065.00. We are willing to be reasonable and so is Mr. Wieder, but we feel that we must have some definite assurance from you as well as from Mr. Kitts that payment for these logs will be made.  *   *   * Will you please give the matter your personal attention and write us definitely what we may expect."

March 12 Lorenz replied; his letter begins: "Att. Mr. John Ferguson. In answer to yours of March 11, relative to  *   *   *." The letter is lengthy but makes no mention of that part of Ferguson's letter which dealt with the October log account. It was admitted in evidence without objection and is not mentioned in the motion for a new trial. April 5 the plaintiff wrote to Kitts (Exhibit O) stating:

"The First National Bank here is worrying me a lot over the trade acceptance for which you promised in your letter of October 24, 1931, and November 23, 1931, to send these trade acceptances upon Mr. Lorenz' return from California.  *   *   *  Mr. Lorenz wrote the First National bank here March 12th 1932 that he would tend to these trade acceptances as soon as seeing you.  Can you do anything that will straighten these October log trade acceptances OK with the bank here. These October logs were to be  *   *   *."

Here he stated once more the terms of the agreement as he understood it.  He then proceeded:

"There has been several trade acceptances paid by Mr. Lorenz but in each case he has refused to pay the interest saying we would straighten this out later with you.  *   *   *"

Kitts did not reply to that letter, but we observe that April 11, 1932, (six days after the date of Exhibit O) Lorenz wrote to the plaintiff, saying:

"Do you expect to be in Klamath Falls in the near future? If so, I would like to have you drop in my office as I want to discuss the Kitts proposition with you. * * *"

In a statement of account dated May 1, 1932, (Exhibit R) and bearing the names of "G. C. Lorenz & W. H. Kitts" as debtors, the plaintiff set forth the condition of account between the parties as of that date. It stated that the two debtors were indebted to him for, among other items, "October logs 206,570 ft. at $10—$2,065.70." As a witness, Lorenz admitted that he received the statement. He wrote no letter concerning it; at least, none expressly mentioned it. May 17, 1932, the plaintiff wrote to Lorenz (Exhibit V). From that letter we quote:

"Your letter of May 14/32 at hand. In reply beg to state * * *. I cannot quite understand your viewpoint regarding October logs after the lumber has all been sold. There never was any mention of my getting my money from Kitts until last week. I have always got my money from you for 1930 and 1931 operations and why October should be different is hard to understand."

May 25, 1932, Lorenz wrote to the plaintiff. His letter made no mention of the subject which we quoted from the plaintiff's letter of May 14. July 19, 1932, the plaintiff wrote to Kitts (Exhibit X):

"You and Mr. Lorenz both led me to believe Mr. Lorenz was to finance your operation during 1931 * * *. Had you and Mr. Lorenz not agreed in Lorenz' office October 10, 20/31 to take care of the October logs in three payments,—30, 60 and 120 days, the bank here would have had lumber attached and liened. * * * Will you take the matter up with G. C. L. at once and have him send me some of the trade acceptances on accounts receivable."

In a letter dated August 6, 1932 (Exhibit Y) which Kitts sent to the plaintiff, he acknowledged receipt of the letter just mentioned and said:

"In answer wish to again state to you that there is not anything I can do, but will talk the matter over with Mr. Lorenz."

The letter did not deny any of the statements which the plaintiff made concerning the terms of their agreement. The other two letters (Exhibits AA and BB), the admissibility of which is challenged by the motion for a new trial, were each written by Kitts to the plaintiff. The one is dated July 24 and the other July 28, 1931. Manifestly, neither refers to the sale of the logs with which we are concerned, that not having taken place until October of 1931. Each of these letters concerned prospective orders for logs.

The above is a review of only a small fraction of the correspondence. Possibly it affords a sufficient impression of the nature of the whole. For the sake of accuracy, we add that only Exhibits E, H, I, J, M, O, R, V, X, Y, AA and BB are challenged by the motion for a new trial. Virtually all of the letters speak of other matters in addition to the October log account, but no objection has been made to the reception of any of the documents on account of that fact. The letters are not couched in abusive language, do not recite anything of an inflammatory character or refer to matters purely personal. None of them appears to have been written for the purpose of making evidence or prejudicing the recipient. All of them are purely business correspondence and appear to be the natural result of the transactions in hand.

■ Let us now consider specifically the admissibility of the letters which passed between Kitts and the plain-

tiff. The first of those (omitting Exhibits AA and BB which were not concerned with the October logs) was a letter from Kitts to the plaintiff and was accompanied with an itemized statement of the October log account. The letter was written four days after the meeting of October 20 and was evidently intended to fix the tally or correct amount of footage in the logs, and make a memorandum of the agreement that payment was to be made in three installments: one November 16, another in 60 days and the third in 120 days; the latter two to be evidenced by trade acceptances. The plaintiff's acknowledgment of this letter added a detail which Kitts' statement of the agreement did not mention, namely, that the first payment was to be made by Lorenz and that the trade acceptances were to bear his endorsement. The verity of this reply was not questioned in any of Kitts' subsequent correspondence. All of the subsequent letters written by the plaintiff urged that the payment due November 15 be made without further delay and that the trade acceptances bearing Lorenz' endorsement be forwarded. Those written by Kitts were replies to the letters just mentioned, and explained the failures to make the promised payment and forward the endorsed trade acceptances. They described the efforts being made to comply with the agreement. None of them questioned the plaintiff's repeated statement that Lorenz was responsible for the first payment and had bound himself to deliver trade acceptances bearing his endorsement to cover the other two payments. Thus, it is seen that all of the letters which followed the first two were concerned with performance of the contract. Kitts' letters supported the plaintiff's contention that Lorenz promised to make

the first payment and to endorse the trade acceptances given as security for the balance.

It will be recalled that the plaintiff contends that Lorenz owned an interest in the mill and that he and Kitts jointly operated it. In a preceding paragraph we reviewed the evidence with which the plaintiff supported that contention. The plaintiff, of course, argues that since Kitts and Lorenz jointly operated the mill the admissions of the former became the admissions of the latter. The respondent does not argue that the plaintiff failed to precede the offer of the Kitts-Wieder correspondence with evidence that the respondent and Kitts jointly operated the mill as partners or in some similar capacity. Nor does he claim that the writing of these letters was beyond the scope of the authority which the purported joint venture had conferred upon Kitts. Since no such contentions are made, we shall mention no further the evidence which indicates that the two defendants were associated in some form of joint venture in part pursuance of which the logs were purchased.

The respondent's objections to the admissibility of the letters which passed between the plaintiff and Kitts were that those written by the plaintiff were his self-serving declarations and that all of this group of letters were written "after the transaction took place (not part of *res gestae*) and were self-serving." He cites in support of his contentions *Dose v. Chas. H. Lilly Co.*, 132 Or. 533, 286 P. 560; *Maasdam v. Van Blokland*, 123 Or. 128, 261 P. 66; *Maeder Steel Products Co. v. Zanello*, 109 Or. 562, 220 P. 155; *The Service Lumber Co. v. Sumpter Valley Ry. Co.*, 67 Or. 63, 135 P. 539; and 22 C. J., Evidence, p. 220, § 193.

The section of Corpus Juris just cited merely states that self-serving declarations are generally inadmissible. It concedes that the rule "has been held not applicable in a great number of cases in which it has been invoked." The decisions of this court above cited are illustrations of the application of the general rule. Of course, if a person sends a self-serving letter to another who is under no duty to make a reply, and makes none admitting the correctness of the letter he received, the letter is inadmissible. But such is not this case. Immediately following the sale of the October logs Kitts wrote to the plaintiff in regard to that transaction. Prior to that letter others had been exchanged between the two men concerning previous sales of logs. We now quote from 20 Am. Jur., Evidence, p. 809, § 961:

"Generally where two persons have carried on correspondence in reference to a particular subject and one of the parties has written a letter to the other making statements concerning the subject matter of the correspondence which the person receiving the letter would naturally deny if not true, the latter's failure to answer the letter is evidence which tends to show that the statements in the letter are true. In other words, letters sent in the general course of business by one party to a suit to the other, and not specifically to manufacture evidence, which, by the character of their contents, are naturally calculated to elicit replies and denials, are admissible in evidence although they are self-serving and are not answered."

The rule of evidence of which the one just quoted is a subdivision is analyzed in Wigmore on Evidence (2d ed.), § 1073. Its substantial equivalent is § 9-226, subd. 3, Oregon Code 1930.

We deem the rule of evidence under consideration so free from controversy and based upon such good sense that it requires no further analysis.

■ Under the general rule which excludes self-serving declarations the letters from the plaintiff to Kitts were inadmissible unless Kitts, upon receipt of them, either expressly or by nondenial, admitted that their recitals were true. Hence, the matter of primary concern was not what the plaintiff wrote, but whether Kitts admitted it to be true. As the plaintiff's self-serving declarations, the letters were inadmissible; but after Kitts had admitted that they were true they were admissible as admissions by him against his interest. We believe that any fair-minded person who read the Wieder-Kitts correspondence would feel that Kitts, by omission to controvert, if not by express admission, agreed that the plaintiff's version of the October sales agreement was correct.

So far we have been proceeding as though the admissibility of the Wieder-Kitts letters concerned Kitts. However, he had not yet filed an answer when the trial occurred, and the purpose of the plaintiff was to charge Lorenz with the admissions found in that correspondence.

Section 9-226, Oregon Code 1930, says:

"In conformity with the preceding provisions, evidence may be given on the trial, of the following facts:
\* \* \*

"5. After proof of a partnership or agency, the declaration or act of a partner or agent of the party within the scope of the partnership or agency, and during its existence; the same rule applies to the declaration or act of a joint owner, joint debtor, or other person jointly interested with the party;

"6. \* \* \*."

The Uniform Partnership Act (Oregon Laws 1939, § 11, p. 1202) provides:

"An admission or representation made by any partner concerning partnership affairs within the scope of his authority as conferred by this act is evidence against the partnership."

From Wigmore on Evidence (2d ed.), § 1077, we quote:

"So far as one person is privy in obligation with another, i. e. is liable to be affected in his obligation under the substantive law by the acts of the other, there is equal reason for receiving against him such admissions of the other as furnish evidence of the act which charges them equally. Not only as a matter of principle does this seem to follow, since the greater may here be said to include the less; but also as a matter of fairness, since the person who is chargeable in his obligations by the acts of another can hardly object to the use of such evidence as the other may furnish. Moreover, as a matter of probative value, the admissions of a person having precisely the same interests at stake will in general be likely to be equally worthy of consideration. There being an identity of legal liability, the two persons are one so far as affects the propriety of discrediting one by the statements of the other. * * * It is enough to note that the principle finds constant application chiefly to the admission of a co-promisor, * * *"

See to like effect 22 C. J., Evidence, p. 351, § 404, and 20 Am. Jur., p. 807, § 958. In § 1078 Dean Wigmore states:

"A partner charges the partnership by virtue of an agency to act for it; * * *"

■ If the relationship between Lorenz and Kitts was as they claimed, that is, a mere creditor-debtor relationship, then Kitts' admissions were not chargeable

to Lorenz, and the Wieder-Kitts correspondence was inadmissible. But if Lorenz' relationship to Kitts was as the plaintiff says, a joint interest in the October logs, then under the rules of evidence just mentioned the admissions of Kitts were the admissions of both men. We reviewed the evidence concerning the relationship that existed between the two defendants in preceding paragraphs. It is evident from that review that the record contains testimony indicating that the defendants were operating the mill as partners or joint adventurers. Such being true, this correspondence was inadmissible. However, when it was admitted, or at some subsequent time, the jury should have been instructed that Kitts' admissions were chargeable to Lorenz only in the event that the jury found that the two men had associated themselves together as partners or in some similar capacity. However, no objection is made to the fact that such an instruction was not given.

■ There are other reasons why the Wieder-Kitts letters were admissible. Kitts, as a witness for Lorenz (see his quoted testimony in a preceding paragraph), was unable to say that a sale of the October logs had occurred or that Lorenz was one of the purchasers. The letters which we have just reviewed indicate that a sale occurred October 20, and that Lorenz was one of the two purchasers. These letters were admissible, therefore, for the additional purpose of Kitts' impeachment. Jones, Evidence in Civil Cases (3d ed.), § 847, and Wigmore on Evidence (2d ed.), § 1043.

■ Let us now consider the admissibility of the statement of account (Exhibit R) which the plaintiff sent to both defendants on May 1, 1932. It will be recalled that among the several items contained in this statement was a charge for the October logs. This statement

bore as the names of the debtors "G. C. Lorenz and W. H. Kitts." Lorenz admitted that he received it. He neither wrote nor spoke to the plaintiff concerning it. The objection made to it follows: "It is a self-serving declaration prepared by the plaintiff."

From Wigmore on Evidence (2d ed.), § 1073, we quote:

"In one situation, however, there has been a uniform rule, namely that the failure to dispute an account rendered, after the lapse of a reasonable time, amounts to an admission of its correctness."

As was said in *Wiggins v. Burkham*, 10 Wall. 129, 19 L. Ed. 884:

"The principle which lies at the foundation of evidence of this kind is, that the silence of the party to whom the account is sent warrants the inference of an admission of its correctness. That inference is more or less strong according to the circumstances of the case."

That rule of evidence authorized the receipt of Exhibit R.

■ We shall now consider the admissibility of the bank's letter to Lorenz (Exhibit M). It is dated March 11, 1932, and its references to the October log transaction are quoted in a preceding paragraph of this opinion. The letter discussed not only that account, but also a trade acceptance due March 15, 1932, and a mortgage which had been assigned to the bank as security for a debt of $1,755. Apparently the letter was written at about the time the plaintiff assigned his accounts receivable to the bank and obviously its purpose was to secure payment of the accounts. The objection made at the time the plaintiff offered this letter was the same as that voiced against the other letters; that is, the

letter was hearsay in character. Lorenz' reply which was dated March 12, 1932, employs a sort of categorical method of reply as is seen from the following quoted from it:

"As to the third paragraph of your letter &ast; &ast; &ast; In answer to the last paragraph of your letter, will say that &ast; &ast; &ast;"

The language just quoted continues:

"You may waive protest, demand and notice of non-payment on the acceptance that you have sent to &ast; &ast; &ast; as I fully realize my obligations. I will ask the bank to return the acceptance on the 15th and will get hold of Mr. Kitts either Monday or Tuesday of next week and send you a check for $794.29 together with a 30 day note covering balance &ast; &ast; &ast;."

Those references were not to the October log account. Lorenz' letter disputed nothing stated in the bank's. Concerning the $1,755 due on the mortgage he, however, said: "Will say that I don't understand this item unless it is an old account which Mr. Wieder had against Mr. Kitts." The careful categorical method of reply which Lorenz employed in his letter excepted one part of the bank's letter—the part which said:

"Nor have the trade acceptances for October logs been executed and delivered &ast; &ast; &ast;. It is our understanding that these logs were to be covered by trade acceptances due one-third &ast; &ast; &ast;. We are willing to be reasonable and so is Mr. Wieder, but we feel that we must have some definite assurance from you as well as from Mr. Kitts that payment for these logs will be made."

Nothing whatever was said in reply to that part of the bank's letter. As a witness, Lorenz admitted that

that part of the letter called for a reply and explained his omission as follows:

"I will admit that I should have when the bank started writing about that, I should have immediately told them the deal was between Mr. Wieder and Mr. Kitts, that I wasn't responsible. But I figured that if I told the bank about it, it would not help Mr. Wieder any, that he would get in bad at the bank and I put it off as long as I could. Mr. Wieder owed the bank, you know. I had a feeling that if I put him on the spot that he would have trouble with the bank."

From Wigmore on Evidence (2d ed.), § 1073, we quote:

"The written statement of a third person may be so dealt with by the party that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements."

It is evident that Lorenz construed the bank's letter (Exhibit M) as an important communication; he admitted that it called for a reply. Intentionally he made only a partial reply. The question is whether his omission to say anything about the October log account constituted an admission of the bank's version of that transaction. We believe it is self-evident that his report of the manner in which he had recently strained his financial resources to meet the demands of his creditors was intended to induce the bank to be lenient with him. His omission to dispute the claims presented by the bank, and which it held as the plaintiff's assignee, obviously was intended to induce the bank to believe that he would ultimately pay all of them. In other words, he sought to create in the bank a feeling of security. These circumstances, in our opinion, afford a just basis for inferring that Lorenz, by not replying to the bank's statement of its version of the October

log account, acknowledged it as correct. When we say that his silence could be construed as an admission that the bank's version of the October sales contract was correct, we merely avail ourselves of the same reasoning as that upon which an *estoppel in pais* is based. Lorenz' brief, referring to the fact that the letter under consideration is signed "John Ferguson, Vice-president," states that the defendants would have liked to cross-examine that individual. But nothing depended upon his veracity, and the jury should have been so told if Lorenz had requested it. The credit of the letter was due to the fact that Lorenz had not questioned its contents when he replied to it. We believe that the letter was admissible.

■ We come now to Exhibit V, a letter from the plaintiff to Lorenz, dated May 17, 1932. It began: "Your letter of May 14/32 at hand. In reply beg to state * * *." After answering three inquiries which Lorenz had submitted concerning matters of no consequence to this case, it closed with the paragraph concerning the October log account which we quoted when we first mentioned the letter. It is necessary to state the circumstances which prompted the plantiff to write this letter. In a letter dated May 10, 1932, which Lorenz wrote to the bank he explained his failure to make a payment then due upon a note for $1,000, and next said:

"In answer to the last paragraph of your letter relative to October logs, which Mr. Wieder delivered to Mr. Kitts, will say that I believe Mr. Wieder knows why he has not received any acceptances or notes with my endorsement on them covering this item. I would much rather have Mr. Wieder explain this to you as I do not care to enter into any controversy between the bank, Mr. Wieder or Mr. Kitts."

So far as the record discloses, this was the first intimation that had come from Lorenz that he was not liable upon the October account. May 14 Lorenz again wrote to the bank, this time urging it to accept $1,500 as payment in full for $2,000 still due to the plaintiff from Kitts under the creditors' agreement and secured by the creditors' mortgage. He sent a copy of this letter to the plaintiff, adding:

"As stated in the letter to the bank, I believe that Mr. Kitts will be in much better shape to make payment to you for his October logs if * * *."

Lorenz' proposals to the bank in his letters of May 10 and May 14 were rejected. Thereupon the plaintiff wrote to Lorenz the letter with which we are now concerned (Exhibit V). In it, after disposing of Lorenz' proposals, the letter concluded:

"I cannot quite understand your viewpoint regarding October logs after the lumber has all been sold. There was never any mention of my getting my money from Kitts until last week. I have always got my money from you for 1930 and 1931 operations and why October should be different is hard to understand."

May 25, eight days after Lorenz' receipt of this letter, he wrote to Wieder but made no mention of that part of Exhibit V which we just quoted. December 6, 1932, in a letter which Lorenz wrote to the bank, he for the first time expressly disavowed liability for the October logs. December 22, 1934, in a letter which Lorenz wrote to the plaintiff, he for the first time in a communication addressed to the plaintiff stated that he was not one of the purchasers of the October logs. His failure to timely renounce liability for the October logs, after the plaintiff in his letter of May 17 (Exhibit V, being the letter with which we are now con-

cerned) had confronted him with the claim, could authorize an inference that the statements contained in Exhibit V were deemed correct by him. The rules of evidence which so persuade us are set forth in preceding paragraphs. No error was committed when this letter was received.

█ The above disposes of all contentions based upon the admission of the twelve exhibits previously mentioned, with the exception of Exhibits AA and BB, both of which are letters which Kitts sent to the plaintiff before the October log sale. We assume that they were received for the purpose of showing the inception of the transaction. We believe that they were not material and unless they served some purpose which has not been mentioned in the presentation of this cause to this court they should have been excluded. However, we cannot see how they could have been prejudicial to the respondent. Their reception, in our belief, could not authorize the grant of a new trial. It follows from the foregoing that nothing done concerning the correspondence above reviewed afforded any basis for an order awarding a new trial.

█ In all likelihood the method which we have been pursuing of considering the letters one by one as though no others had been written fails to reveal the significance of the occasional passage which we quoted from this letter or from that one. However, they were not written without regard to the others, and when all forty-eight are read chronologically as a series of business correspondence they throw considerable light upon the issues of this case. With the exception of AA and BB they were admissible. Admissions of the kind which we have been considering are, of course, not conclusive

evidence of the facts admitted. Estoppels and admissions made in pleadings are conclusive.

The motion for a new trial was accompanied by an affidavit signed by Lorenz in which he stated that since the trial he had had two conversations with

"one Mrs. W. H. Kitts, at which time she informed me that after the filing of the above-entitled action the plaintiff, Henry S. Wieder, called upon her at her home at Williams, California, where she has lived since before this action was filed, and during their conversation among other things the plaintiff said that he, Henry S. Wieder, sold the logs in question to W. H. Kitts and not to G. C. Lorenz, but that he had hopes he could get G. C. Lorenz to pay for same. She further stated that  *  *  *; and said witness informed affiant that upon a retrial of this action she would appear and so testify  *  *  *. That affiant could not, with reasonable diligence, produce said witness when said trial was had because he was unaware at that time that such a conversation took place  *  *  *."

In another affidavit made by Lorenz in support of the motion for a new trial, he said:

"I have received a letter from Ruby I. Kitts, being the same person as Mr. W. H. Kitts, which generally substantiates the oral conversation I had with her.  *  *  *  Prior to said trial I inquired of defendant W. H. Kitts as to his knowledge of evidence which would aid my defense. He informed me that he had been approached by plaintiff Henry S. Wieder with a suggestion that he testify for the plaintiff at the trial of said case, but that he had declined to do so, but at no time did the said W. H. Kitts inform me that plaintiff had admitted to him or his wife that plaintiff did not sell the logs in question to me, but sold them to the said W. H. Kitts; that due to the fact that Mrs. Kitts has been in Williams, California, since this action was filed I did not have a talk with her until I was passing through said city on February 5, 1939, two days after

the trial, at which time she gave me the information contained in my former affidavit."

The material part of the letter accompanying the affidavit follows:

"Mr. Henry S. Wieder visited at our home after he filed suit against you in Klamath Falls, Oregon, and in discussing the case he stated that he had not made an agreement with you to buy the logs but that he had made an agreement with my husband W. H. Kitts, but inasmuch as Mr. Kitts was unable to pay for same he was going to try and have you pay therefor. I heard him inform W. H. Kitts that if he did not appear at the trial and testify for him he would not be able to win the case.

"These statements were made during the conversation which touched upon the logging operations at Bonanza, Oregon, in the fall of 1931 and while the conversation lasted for some little time these were the principal points developed thereby."

Section 2-802, Oregon Code 1930, in enumerating the causes for which a judgment may be set aside and a new trial granted, includes the following:

"Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial."

Section 2-806 states:

"* * * if the cause be newly discovered evidence, the affidavits of any witness or witnesses showing what their testimony will be, shall be produced, or good reasons shown for their nonproduction; * * *"

The purported testimony of Mrs. Kitts was not cast in the form of an affidavit by her as required by § 2-806, and the record before us contains no explanation whatever for the nonproduction of such an affidavit. It will be observed that § 2-806 requires that

"good reasons" must be shown if the statement of facts attributed to the new witness is not reduced to the form of an affidavit. The requirement that the newly discovered witness's statement must be submitted in the form of an affidavit is an assurance that he will not refuse to so testify after the judgment has been set aside. If a false statement by him, but not under oath, is the medium by which a just judgment is set aside, no one can be penalized although justice is outraged. Motions for new trials based upon claims of testimony newly discovered are not favored. This court so declared in the early decision entitled *Lander v. Miles,* 3 Or. 40. See to like effect 46 C. J., New Trial, p. 243, § 216, and 20 R. C. L., New Trial, p. 289, § 72. It is essential that when a claim of newly discovered testimony is the basis for the motion, the requirements of our laws which are intended to assure good faith must be complied with. Since Mrs. Kitts' testimony was not submitted through the medium of her affidavit, and since no reason is given to excuse this omission, the motion for a new trial should have been overruled.

The above disposes of all the grounds argued in support of the order granting the new trial. None of them, in our opinion, suffices. Therefore, the order setting aside the judgment and granting the new trial must be vacated and the judgment reinstated. That order is, therefore, reversed.

RAND, C. J., and KELLY, J., concur.

BEAN, J., not participating in this decision.