Argued October 27; affirmed December 2, 1947

IN RE KRIES' ESTATE

ARNWINE *v.* CLYDE

187 P. (2d) 670

*Colon R. Eberhard,* of La Grande (Cochran & Eberhard on brief), for respondent.

*R. D. H. Swindley* and *S. H. Burleigh,* both of La Grande (Dixon & Burleigh on brief), for appellant.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

LUSK, J.

The claimant and respondent Rector Arnwine presented his claim to the executor of the estate of Nicholas Kries, deceased, based upon a promissory note alleged to have been executed by the deceased in the principal sum of $4,500.00, dated October 30, 1937, payable to Rector Arnwine five years after date with interest at the rate of five per cent per annum from date until paid. Claimant alleged that six payments of interest in the amount of $225.00 each had been made, the last of such payments on November 15, 1943, and that there was still unpaid and owing on the note the sum of

$4,500.00 with interest thereon at five per cent per annum from October 15, 1943, a total of $4,993.75. The executor rejected the claim, and thereafter a hearing was had before the county court, which allowed the claim. The executor appealed to the Circuit Court, and the case was tried to a jury, which rendered a verdict in favor of the plaintiff for the full amount demanded. From the judgment entered upon such verdict the executor has appealed.

The first assignment of error is based upon the court's denial of the executor's motion for an involuntary nonsuit based upon the ground that the corroboration of the claim required by § 19-704, O. C. L. A., was wanting. The claimant testified that at the solicitation of the decedent Kries he loaned the latter $4,500.00, and that Kries executed and delivered to him the note sued upon, together with a mortgage on real and personal property to secure its payment, in the office of an attorney at Prairie City, Oregon, on October 30, 1937, the date the note bears, and that nothing had been repaid except the interest as above stated. He identified the note and mortgage, and they were received in evidence. The mortgage was never recorded. Ben C. Parsons, a witness for the claimant, testified that, while he was working for Kries on the latter's ranch near Ontario, Kries told him that he was going to Prairie City to borrow some money, and asked the witness to drive him to Prairie City, which he did on October 30, 1937; that he was present in the attorney's office at the time of the transaction and saw the claimant count $4,500.00 in currency and deliver it to the decedent, and also saw a note and mortgage signed. He admitted that he would not know the papers if he saw them because, as he said, he "didn't go over the papers or anything like that."

■ The defense, as announced in the opening statement of counsel for the executor, was that the note was a forgery. There were received in evidence the decedent's will, checks written by him, and other papers in his handwriting and concededly signed by him. These genuine specimens of the decedent's handwriting, which are before us, sufficiently resemble the questioned signatures on the note and mortgage to make it a jury question as to whether these documents were executed by Mr. Kries or were forged. See § 2-816, O. C. L. A. A witness for the claimant, who qualified as a handwriting expert, testified that in his opinion the signatures on the note and mortgage were those of the decedent. Some of the specimens of the decedent's handwriting were received in evidence as a part of the executor's case and after the motion for a nonsuit had been denied. The testimony of the handwriting expert on behalf of the claimant was introduced in rebuttal to contradict evidence given by a handwriting expert called by the executor that the note and mortgage were forged; and it was contended on the argument in this court by counsel for the executor that, in reviewing the ruling on the motion, we are limited to a consideration of the evidence received before the motion was submitted. That, of course, is not the law, for defects in the proof, if there were any, at the time the claimant originally rested, would be cured by evidence subsequently introduced by either party, and in determining whether there was a case sufficient to be submitted to the jury we take the whole of the evidence, no matter when it came in. *Derrick v. Portland Eye, Ear, Nose & Throat Hospital,* 105 Or. 90, 94, 209 P. 344.

■ Thus, the testimony given by the claimant himself is corroborated in the following particulars: By the

testimony of the witness Parsons as to the delivery of $4,500.00, the principal amount of the note, as a loan to the decedent, on the date the note purports to have been executed, and the execution at that time of *a* note and mortgage; by the reception in evidence of the note and mortgage and testimony of an expert witness that they bore the genuine signature of the decedent Kries; and by the exhibits containing admitted specimens of the decedent's handwriting, which, when compared with the note and mortgage, tend to show that the signatures thereon were genuine and not forged. This evidence, in our opinion, makes out a *prima facie* case sufficient to sustain a verdict in behalf of the claimant independent of the claimant's own testimony. See *Estate of Banzer*, 106 Or. 654, 657, 213 P. 406.

■ It is argued on behalf of the executor that there is no corroboration of the testimony that the note had not been paid. That, however, was unnecessary, as it is the settled rule in this state that payment is an affirmative defense which the executor in a proceeding of this character has the burden of establishing. The claimant, therefore, was not required to introduce proof of nonpayment in the first instance, nor to supply corroboration of his evidence on that question. *Littlepage v. Security Savings & Trust Co.*, 137 Or. 559, 561, 3 P. (2d) 752, and cases there cited.

We think there was no error in denying the motion for a nonsuit.

It is claimed next that the court erred in denying a motion of the executor for a mistrial. The question arose in this way: The witness who testified for the claimant as an expert on handwriting was C. K. McCormick, county judge of Union County, from whose decision holding the claim valid the appeal was taken

to the Circuit Court. On his direct examination the following occurred:

"Q Your name is C. K. McCormick?

"A Yes, sir.

"Q You are the County Judge of this County?

"A I am.

"Q Were you ever connected with the County Clerk's office of this county?

"A Yes, I was in the Clerk's office for thirty years.

"Q While you were in the Clerk's office of this county, did you have occasion to examine writings and questioned writings?

"A Yes, a number of times while I was there, I saw and had many signatures.

"Q Have you had experience in comparing signatures through those years?

"A I have compared them at different times, yes, for various reasons.

"Q As a matter of fact, you are the judge who passed on these claims, here, are you not?

"MR. BURLEIGH: Object to this, or anything anything of this kind; brought in three or four times by counsel, and we think it is dirty pettifogging; and ask to have the jury instructed to disregard that question.

"MR. EBERHARD: I made a mistake.

"THE COURT: The jury will disregard it.

"MR. EBERHARD: Very well. I get the point he is kicking about. I am sorry."

The witness then proceeded, in answer to questions addressed to him, to express his opinion, based upon a comparison of the writings in evidence, that the signatures on the note and mortgage were not forged. There was no further objection to his testimony until after both parties had rested and counsel

for the claimant had made his opening argument to the jury, when counsel for the executor submitted his motion for a mistrial upon the grounds

"that the jury has been unduly influenced and intimidated, in that the Honorable C. K. McCormick, County Judge of Union County, Oregon, from whose judgment and order this case is an appeal, was called as a witness on behalf of the Claimant, and the fact brought before the jury that he had previously passed upon this question in favor of the Claimant, and that he was testifying as an expert who had heard all the testimony and matters in dispute, and that he gave as his opinion the signature was the genuine signature, and in effect told the jury that he, who had passed upon the facts before them, felt that his decision was right, and made himself a partisan on the part of the Claimant, thereby, because of his position and influence in the county and community, put undue influence upon the jury; and, we feel, intimidated the jury because of his position in county affairs and county business, so that any juror would be reluctant to offend him by reversing his decision."

In his opening statement to the jury, counsel for the claimant said:

"The claim was filed in the county court and rejected by the Administrator, and was taken before the county court, and was adjudged, and there it was allowed, and then the Administrator has appealed it here, where, under the law he has a right to a jury trial."

Again, the claimant on direct examination testified that after the executor rejected the claim "it was taken up with the County Judge and was allowed" and "then the case was appealed here to the jury". Though these matters were wholly irrelevant, no objection was made either to the statement of counsel or to the testi-

mony of the witness, so that, when Judge McCormick was called to the stand, the jury was already informed that he had allowed the claim in his capacity as county judge.

The only objection or request for a ruling made prior to the motion for a mistrial was that which we have quoted above. The court then promptly complied with the motion of counsel for the executor that the jury be instructed to disregard the question, whereupon counsel for the claimant apologized.

Upon this record, we think that the court, in the exercise of its discretion, did not commit reversible error in denying the motion for a mistrial, coming as it did when the case was nearly ready to be submitted to the jury.

■ The grounds stated in the motion are, in substance, that the county judge was not a competent witness, or at least that he was not a competent witness to testify as an expert on handwriting, in view of his prior connection with the controversy. The argument here is, that as a witness he was disclosing to the jury in the Circuit Court the personal reasons which actuated him in deciding for the claimant as the judge of the County Court, and that to permit that to be done is contrary to public policy, citing *Noland v. People,* 33 Colo. 322, 80 P. 887. As to this it might be said that, whether contrary to public policy or not, such testimony would be irrelevant and therefore inadmissible. That, however, is not the posture of the present case. The witness McCormick was not asked to state the grounds of his decision in the County Court, nor did he state them. He merely testified to an opinion as to the genuineness of the signatures on the note and mortgage. It nowhere appears that this was an issue

before him in the County Court, though that fact, it may be conceded, does not preclude the possibility that the jury may have conjectured that it was. In any event, while he was a witness there was no suggestion to the court by counsel for the executor that such was either the intent or the effect of his testimony.

■ It is not contended that the county judge was not a competent witness for ordinary purposes, that is, to testify to some fact within his knowledge. In this state, under a statute, even the presiding judge at a trial may be called as a witness by either party (§ 3-106, O. C. L. A.), though the legislature, by providing that the judge who is compelled to testify may order the trial to be continued and to take place before another judge, has made it possible to avoid embarrassments and prejudicial consequences which might otherwise result from such a proceeding. It must be conceded, however, that it is one thing for a judge who has previously passed upon the case to testify to a *fact* within his knowledge, and quite another to do what was done in this case. For a party to attempt to support his case with the expert testimony of the judge who has decided for him in the lower court scarcely seems to conform to the standard of fair play that is supposed to prevail in a trial by jury under our system of administering justice. It is not difficult to imagine the evils which might flow from a ruling which sanctioned such a practice. Our circuit judges have large discretionary powers to control the course of the trial and to take measures for safeguarding the verdict against the likelihood that it will be the product of prejudice or any improper influence. Whether those powers are large enough to exclude testimony of the sort under consideration we need not decide, for it was certainly within the discretion of the presiding

judge to overrule the motion for a mistrial on the ground that no objection to the testimony was ever made, that the motion came too late, and the point, therefore, was waived. See 53 Am. Jur., Trial, 680, § 968; *Louisville Ry. Co. v. Masterton*, 29 Ky. Law Rep. 829, 96 S. W. 534. We acquit counsel for the claimant of the charge of pettifogging. According to his statement to the trial judge, which was not disputed, neither he nor the claimant knew until the beginning of the trial that the defense would be forgery, and, being thus taken by surprise and the necessity of producing testimony to meet that issue, he called Judge McCormick, "who", he said, "had been used for years as an expert witness." He assured the court that he was the only witness known to him to be available and that he was not called because of his position as county judge.

The only other assignment of error is based upon the denial of the executor's motion for a new trial. The grounds of the motion are, first, in substance, that the claimant did not make out a *prima facie* case, and, second, newly discovered evidence. The first ground has already been covered by what we have said regarding the ruling on the motion for a nonsuit.

■ In support of his right to a new trial for newly discovered evidence the executor filed his own affidavit in which he swore:

> "That since the verdict was rendered in the above entitled cause, I have been informed and verily believe that the claimant can neither write nor read the English language."

No additional showing as to alleged newly discovered evidence was made, and the motion was properly denied if for no other reason than that there was

complete failure to comply with the requirement of § 5-805, O. C. L. A., that "the affidavits of any witness or witnesses showing what their testimony will be, shall be produced, or good reasons shown for their non-production". See *Wieder v. Lorenz,* 164 Or. 10, 36, 99 P. (2d) 38.

For the foregoing reasons the judgment of the Circuit Court is affirmed.