Argued May 1, affirmed May 23, 1951

# STATE OF OREGON *v.* EDISON
232 P. 2d 73

*Edward Branchfield,* of Medford, argued the cause for appellant. With him on the brief were George M. Roberts and G. W. Kellington, both of Medford.

*Paul W. Haviland,* Deputy District Attorney, argued the cause for respondent. With him on the brief was George W. Neilson, District Attorney.

Before BRAND, Chief Justice, and HAY, LUSK, LATOURETTE and WARNER, Justices.

HAY, J.

The defendant, Earl Edison, a man 51 years of age, was convicted of the crime of rape of a female child under the age of 16 years. He has appealed from a

judgment sentencing him to confinement in the state penitentiary for an indeterminate term not exceeding 12 years, assigning as error the denial of his motion for a new trial.

On the trial the state elected to stand upon the specific date of July 17, 1949, as that upon which the crime was committed. The defendant offered evidence tending to show that on that date he was at a different place from that where the crime was alleged to have been committed. His motion for a new trial was based upon (a), purported newly discovered evidence in support of his defense of alibi, (b), evidence tending to show that, at the time of the alleged crime, he was impotent, and (c), a contention that the evidence adduced at the trial was not sufficient to justify the verdict.

We shall first dispose of the last mentioned point. We appreciate the fact that the conviction was based largely upon the uncorroborated testimony of the complaining witness. In this state, however, such corroboration is not required by statute, and therefore is not absolutely essential. The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact except usage, perjury, and treason. *State v. Friddles,* 62 Or. 209, 210, 123 P. 904; § 2-202, O.C.L.A. There was credible evidence, in addition to the testimony of the prosecutrix, of the presence of defendant at the scene of the alleged crime on the day upon which the state elected to rely as that upon which the offense was committed, and as to which defendant's alibi was put forward. The defense was spirited and well-conducted. Defendant's argument is that his guilt, under the evidence, is incredible. There is no necessity for us to detail the evidence. It was sufficient, in our opinion, to sustain a conviction, and that being

so, we are constitutionally inhibited from re-examining it. Art VII, § 3, Oregon Constitution; *State v. Burke,* 126 Or. 651, 669, 269 P. 869, 270 P. 756; *State v. Eppers,* 138 Or. 340, 353, 3 P. 2d 989, 6 P. 2d 1086; *State v. Broom,* 135 Or. 641, 649, 297 P. 340.

The prosecutrix testified that the offense was committed at or near Medford between 2 o'clock and 2.30 o'clock p. m., on July 17, 1949. The defendant and one Horace Spiller testified that, on that day, they, with Spiller's wife and daughter, traveled together in defendant's automobile from Medford, Oregon, to a point south of Yreka, California, leaving Medford between 9.30 and 10.15 o'clock a. m. and not returning there until some time between 4.30 and 5.30 o'clock p. m. Spiller's affidavit in support of the motion for a new trial states that since the trial, the accountant who prepared his income tax returns returned to him certain credit card delivery tickets issued to Spiller by the Union Oil Company of California, one of which tickets showed that, on July 17, 1949, seven gallons of gasoline were delivered to him at a Union Oil Company station at Yreka, California; that such gasoline was placed in a motor vehicle bearing Oregon License No. 446-515, which was the license number of defendant's car for the year 1949; that, at the time of the trial, Spiller did not remember that he had purchased such gasoline, but that the credit delivery ticket had refreshed his memory; that he recognized the signature on the ticket as his own signature; and that Edison was not aware of the purchase of such gasoline. Defendant's affidavit stated that he did not know of the existence of the credit slip at the time of the trial.

■ Unfortunately for the defendant, Spiller's affidavit was false. To the credit of defendant's counsel be

it said that, in oral argument before this court, he stated that, since making such affidavit, Spiller has admitted its falsity, and has pleaded guilty to a charge of perjury in that connection. It appears, therefore, that the alleged newly discovered evidence in support of defendant's alibi has fallen apart, and we need consider it no further.

It was proved upon the trial that the prosecutrix gave birth to a child on February 15, 1950. Defendant contends that proof that he was impotent at the time of the alleged rape would tend, if a new trial is granted, to change the result. He made no claim, on the trial, that he was impotent, but in his affidavit he swears to that as a fact, and says that his impotency existed long prior to the date of the alleged crime and has existed ever since. He states that, on February 8, 1950, he consulted with Dr. Max Himmelfarb in Portland, for examination and treatment in respect of such impotency.

The motion for a new trial was supported further by the affidavit of defendant's wife, who married him two days before the trial, to the effect that defendant was at that time impotent and unable to perform the sexual act. An additional affidavit by defendant stated that Dr. Charles T. Sweeney had been his physician for many years, and that Dr. Sweeney had performed a sterilization operation upon defendant at some time prior to the year 1940, but that defendant does not remember the exact date, and that, at the time of the trial, Dr. Sweeney was out of the state and he was unable to contact him. An affidavit by Dr. Sweeney states that he is a licensed physician and surgeon in the state of Oregon, and has been so licensed for more than 41 years; that he is acquainted with defend-

ant, and had known him and had been his physician for many years; that at some time prior to 1940 he performed an operation on defendant which rendered him sterile, and that he knows it would be impossible for such condition of sterility to have been changed since that time; that it would have been impossible for defendant to have become the father of any child since such sterilization operation; and that "as a result of said operation I think it is quite probable that the said Earl Edison is also impotent."

██ In the brief filed on behalf of the state in this case the district attorney undertakes to inform us that, on September 6, 1950, he interviewed Dr. Sweeney in Jackson County, at which time the doctor told him that since signing the affidavit mentioned above he had checked over his old records and was unable to find therefrom that he had performed any sterilization operation upon defendant, and that in the event of a new trial he would not testify that he had performed such an operation. It was the district attorney's duty, under those circumstances, to have procured Dr. Sweeney's affidavit to that effect, or to have shown by affidavit a satisfactory reason for not having procured such affidavit. We have no right to consider any matter of fact not appearing upon the record of the case, and counsel's recitation of matters dehors the record is highly improper. § 5-805, O.C.L.A.; *Wieder v. Lorenz,* 164 Or. 10, 36, 99 P. 2d 38; *In re Kries' Estate,* 182 Or. 311, 320, 187 P. 2d 670.

Defendant's affidavit states that the reason why he did not testify on the trial as to his impotency was that he had no evidence to corroborate his testimony in that regard, and his attorneys advised him that his unsupported testimony probably would be received with scepticism by the jury.

We have held that newly discovered evidence which will justify a court in granting a new trial must meet the following requirements: (1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as, with due diligence, could not have been discovered before the trial; (4) it must be material to the issue; (5) it must not be merely cumulative; (6) it must not be merely impeaching or contradicting of former evidence. § 5-802, O.C.L.A.; *State v. Hill,* 39 Or. 90, 94, 65 P. 518; 39 Am. Jur., New Trial, § 158.

If defendant was impotent, he was undoubtedly aware of that fact long before the trial. If it is true that on February 8, 1950, or within a month and 12 days of the trial, he consulted Dr. Himmelfarb relative to his impotency, he must have been aware of that fact at the trial. Moreover, if in fact a sterilization operation was performed upon him by Dr. Sweeney, it seems improbable that he could have forgotten about it. It is obvious that the evidence in that regard was not newly discovered, and therefore it did not meet the requirements of law. § 5-802 (4), O.C.L.A.; 39 Am. Jur. New Trial, § 159.

Even if reasonable diligence on the part of defendant to procure the attendance of Dr. Himmelfarb and Dr. Sweeney at the trial had been shown, which it was not, there was no showing whatever of any reason why he should not have secured the testimony of competent physicians, who were certainly available to him at Medford, as to his alleged impotency. As to Dr. Sweeney's affidavit stating his belief in respect of defendant's sterility and impotency, a similar affidavit by a physician in *State ex rel. v. Woodmansee,* 156 Or. 607, 620, 69 P. 2d 298, was held to be insufficient to

enable this court to say that the trial court had abused its discretion in denying a motion for a new trial. In that case, quoting from the opinion in *Seaton v. Security S. & T. Co.*, 131 Or. 261, 274, 282 P. 556, we said:

" 'A party cannot withhold part of his evidence, experiment with the balance, and in the event the verdict goes to his opponent obtain a new trial so that he may venture forth with the weapon he neglected upon the first trial. "No man is entitled to more than one fair trial." ' "

The motion asserts that, if a new trial is granted, defendant will submit himself to blood tests and will move the court for an order requiring the complaining witness and her child to do likewise, in order to determine whether he could possibly have been the father of said child. No reason is advanced why such blood tests were not made in advance of the trial, except an affidavit by a laboratory technician to the effect that ordinarily a baby's blood type is not fixed until the baby is at least three months old, and that certain tests require from four to six weeks after the taking of blood samples. This question does not appear to involve newly discovered evidence, or to be ground for a new trial. If blood tests were desired, and there was not sufficient time to make them before the date set for trial, the court, upon a proper showing, would no doubt have granted a reasonable continuance for that purpose. No such showing was made, and no continuance was asked for.

The affidavit of defendant's wife was evidently not accorded much weight by the trial judge. Her interest in the outcome of the trial was obvious. The weight to be given to the testimony of an interested witness, even if uncontradicted, was for the trial judge. Annota-

tion, 8 A.L.R. 814. The fact of the marriage having taken place within two days of the trial was a circumstance which the judge was entitled to take into consideration, along with the witness's general interest in the case. He was not bound, in our opinion, to accept her affidavit at face value.

A motion based upon newly discovered evidence is addressed to the sound discretion of the trial court. *State v. Mims*, 36 Or. 315, 327, 61 P. 888; *Ruckman v. Ormond*, 42 Or. 209, 212, 70 P. 707; *Stern v. Volz*, 52 Or. 597, 598, 98 P. 148. We cannot say that the court's discretion was abused in the present instance. We find no error in the record. The judgment is affirmed.