Argued September 5, affirmed September 26, 1951

# STATE OF OREGON *v.* DAVIS
235 P. 2d 761

*John W. Pennington* and *Frank B. Reid,* of Eugene, argued the cause and filed a brief for appellant.

*C. E. Luckey,* District Attorney, of Eugene, argued the cause for respondent. With him on the brief was Roland K. Rodman, Deputy District Attorney, of Eugene.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LATOURETTE and WARNER, Justices.

### WARNER, J.

The defendant, Joe C. Davis, was indicted for the crime of rape upon his daughter committed on the 26th day of November, 1950, in a small barn located about one hundred yards to the rear of defendant's home. Davis lived in Springfield, Oregon, with his family, consisting of his two daughters, Cherie, the

prosecuting witness, and Sharon, respectively aged 13 and 10 years, and his wife, Rachel, who was a stepmother to the children. Defendant was a trader in horses and cattle and was using his barn at the time as a shelter for a cow acquired that day and a cow and calf of previous ownership. After a trial lasting four days, he was convicted of rape as charged and thereafter sentenced to a term in the penitentiary not to exceed 20 years. From this judgment the defendant has appealed, assigning as the sole error a denial of his motion for a new trial predicated upon the claim of newly discovered evidence.

The motion was supported by six affidavits, but the defendant has elected to stand upon the affidavit of Samek alone as evidencing sufficient reasons to justify a reversal of the order of the lower court in refusing him another hearing. We, therefore, confine our examination to that part of the record.

The affiant Samek describes himself as a "logger by trade and well acquainted with G. H. Applegate who lives in a trailer house in back of the home of Joe C. Davis [the defendant]." The Applegate referred to is apparently the same person who testified as a witness in behalf of Davis and who at the trial described himself as "living in a trailer house at Mr. and Mrs. Davis' home." Samek further says that on the 26th day of November, at about 3 p.m., he drove to Mr. Applegate's place for the purpose of inviting Applegate to a birthday party honoring the affiant. Failing to find Applegate at home, he decided to park his car "next to Mr. Applegate's trailer house" and await his return. While sitting in his car "and sometime between 3:30 and 4 P.M.," he observed Davis drive into his yard with his pickup truck. In the truck

with Davis were his wife and daughter, Cherie, and a recently acquired cow. According to affiant, the Davises went into the house "where they stayed for some time," after which Davis and Cherie came out and together unloaded and watered the cow before putting it in the Davis barn. He says they then drove a pastured cow and calf into the barn, and then went back to the house together. The nub of Samek's offered testimony is found in the following statements, culled from his affidavit:

> "I could not see them when they were in the barn but they were only in there for a few minutes which I would judge would be the normal time required to feed the cows * * *.
>
> " * * *
>
> "I could see no difference in their appearance from the time I saw them going into the barn and when they came out a few minutes later * * *."

Samek gives as excuse for his failure to make an earlier report of his observations that he did not again recall the incident until he "read in the paper that Mr. Davis had been convicted for a crime which was supposed to have been committed on that afternoon [November 26, 1950]," whereupon he reported it to Applegate, Samek's friend and Davis' neighbor, who advised him "immediately to see Mr. Davis' lawyer." Davis was convicted January 11, 1951, and the Samek affidavit was signed four days later.

The over-all tenor of Samek's affidavit is (1) that in the opinion of the affiant there was not a sufficient lapse of time between the time that Davis and his daughter last entered the barn and the time of their departure therefrom to have permitted the consummation of an act of sexual intercourse; and (2) that there was no change in their appearance (presumably

in the condition of their garments) from which a sexual encounter between them might be inferred.

■ Newly discovered evidence which will justify a court in granting a new trial must meet the following requirements:

> "(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as, with due diligence, could not have been discovered before the trial; (4) it must be material to the issue; (5) it must not be merely cumulative; (6) it must not be merely impeaching or contradicting of former evidence. § 5-802, O.C.L.A." *State v. Edison,* 191 Or. 588, 232 P. 2d 73, 77.

■ Applications for a new trial on the ground of newly discovered evidence are not favored, are viewed with distrust and construed with great strictness. *Lewis v. Nichols,* 164 Or. 555, 570, 103 P. 2d 284; *Wieder v. Lorenz,* 164 Or. 10, 37, 99 P. 2d 38; *Lander v. Miles,* 3 Or. 40, 43.

■ A court will not heed the application unless the supporting affidavits show a state of undisputed facts which would probably lead an ordinarily reasonable person to a different conclusion from that arrived at by the jury, other necessary elements being present. *Watrous v. Salem Brewery Association,* 151 Or. 294, 302, 49 P. 2d 375.

■ The most that could be expected from Samek's evidence is that he would testify (1) that Davis and Cherie were in the barn only "a few minutes" after taking in the cow and calf; and (2) that, when they came out the last time, he "could see no difference in their appearance." Such testimony, if given, would be cumulative in character. As such, it fails to meet the requirements justifying an order for a new trial.

§ 5-802, O.C.L.A.; *State v. Edison,* supra; *State v. Evans,* 98 Or. 214, 192 P. 1062, 193 P. 927; *State v. Hill,* 39 Or. 90, 95, 65 P. 518. Examining the record we find a general accord among all the witnesses giving testimony as to the length of the time the father and daughter were last in the barn that it was of relatively short duration. The defendant stated: "We wasn't out there very long." Mrs. Davis, testifying as a witness for her husband, said it was "about ten minutes," and Cherie testified as follows:

"Q. Now how long did this [the act of intercourse] take you? Did it take very long when he did this?

"A. No."

What Samek might add as to the time element would, therefore, be in harmony with and add nothing to what the principals had already communicated to the jury.

The same objection applies to Samek's offer relative to the appearance of the parties as they left the barn and returned to the house. The defendant's wife assured the court that Cherie on her return from the barn appeared neither flustered, flushed nor excited and that her clothing was free from mud and straw. She made the same observation concerning the presence of mud on the defendant's clothing. Not only do we believe that the evidence offered through the Samek affidavit is cumulative but we are persuaded that, if received, it would in all probability not change the result if a new trial was granted.

■ The record is wanting in a showing why the evidence offered through Samek could not have been discovered before trial by the exercise of due diligence. *Lewis v. Nichols,* supra; *State v. Evans,* supra; *State*

*v. Hill,* supra. The defendant here is met with the presumption that he failed to exercise due diligence before the trial and that he would have discovered the evidence now offered through Samek in time to have presented it at the trial had he exercised industry and diligence. *Lewis v. Nichols,* supra, at page 570. It is the usual course of the innocent when charged with such a nefarious crime to make a timely and diligent inquiry among his neighbors and friends in the hope of discovering all possible information helpful in securing his exoneration. If Davis did so, it has not been made apparent.

■ The motion should have been supported by affidavits showing the particular effort made to discover the evidence, giving the circumstances and the names of persons of whom inquiry is made. In *State v. Hill,* supra, at page 95, this court said:

> "The reasonable diligence required to be exercised in order to justify a court in setting aside a verdict is a question of degree, which the court must determine from the facts stated in the affidavit of the applicant for a new trial. The particular effort which the party has made to discover the testimony before the trial must be stated, giving the circumstances and the names of the persons of whom he made inquiry; it not being sufficient merely to affirm that he has used 'due diligence' or 'reasonable diligence' or to employ equivalent expressions."

Also see *In re Estate of T. A. Stoll,* 188 Or. 682, 214 P. 2d 345, 217 P. 2d 595; *Lewis v. Nichols,* supra; *State v. Evans,* supra.

■ A motion for a new trial based upon the claim of newly discovered evidence is addressed to the sound discretion of the trial court. See *State v. Edison,*

supra, and cases there cited at page 77. The judge who presided at defendant's trial is, in terms of years of service, the senior circuit judge in Oregon, and our confidence that he gave the motion a serious and earnest consideration consonant with his abundant learning and rich judicial experience is confirmed by his memorandum opinion which is a part of the record. We are satisfied that the lower court did not abuse this discretion and that the motion was properly denied.

The judgment is affirmed.