Argued and submitted September 4, 1992, reversed and remanded for new trial February 3, reconsideration denied July 7, petition for review allowed July 27, 1993

(317 Or 271)

# STATE OF OREGON,
*Respondent,*

*v.*

# DEBRA LYNN ARNOLD,
*Appellant.*

## (C90-11-36757; CA A70340)

846 P2d 418

Susan Elizabeth Reese, Portland, argued the cause for appellant. With her on the brief was Reese & Goffredi, Portland.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

* Leeson, J., *vice* Buttler, J., retired.

### De MUNIZ, J.

Defendant appeals her convictions of four counts of sexual abuse in the first degree. ORS 163.427. We reverse.

Defendant was charged with sexual abuse of her daughter, who was five years old at the time of trial. The charges arose after the day care provider saw the child involved in sexualized behavior and contacted Children's Services Division (CSD). Lynn Jenkins, a social worker, visited the provider and then arranged for the child to see Dr. Bays, the director of the Child Abuse Response and Evaluation Services at Emanuel Hospital. Bays examined the child twice. Although the examinations revealed physical evidence that might indicate abuse, the evidence was not conclusive.

At trial, the prosecutor asked the child if anyone had "touched her in her pee-pee [vaginal area]" or her bottom. She stated, "I don't know," and "Only to see whether I was wet or not." The prosecutor called Jenkins to impeach the child's testimony. She testified that the child had said that she was "worried about that [defendant] comes in her bedroom at night and puts her finger inside her pee-pee while she is asleep." She then asked the child to demonstrate with an anatomically correct doll where defendant touched her at night, and the child put a hand of the mother doll into the vaginal opening of the child doll.

Before trial, defense counsel had subpoenaed documents from CSD relating to Jenkins. In response, the agency had provided Jenkins' 1979 employment application. The application inquires if the applicant has "a high school diploma or a GED Certificate." Jenkins marked, "Yes." In the space to indicate colleges attended, Jenkins wrote:

> "I audited seven classes while my husband was an under-graduate student at SOC [Southern Oregon College] - all classes pertained to child development."

That was the only information that the application provided about Jenkins' education.[1] However, on cross-examination,

---

[1] After trial, defense counsel learned that CSD had not submitted all the documents he had requested pertaining to Jenkins. There were three later employment applications in which she claimed to have attended Citrus College in a program of "general studies" but stated that she did not obtain a degree.

she testified that she had received a college degree in early childhood education in 1965 from Citrus College in California. That reference to Citrus College was the first indication the defense had about that claimed qualification. Counsel explored the discrepancy between the application and Jenkins' testimony. She answered that the degree was in 1965, a "long time ago" and was only from a two-year junior college.

Jenkins was the state's final witness in its case-in-chief. The day after her testimony, defense counsel authorized an investigation to confirm that she had the degree that she claimed. Before the trial had concluded, counsel had learned that Citrus College had no record of a Lynn Jenkins having attended the school. Through public documents, he had also discovered Jenkins' maiden name and that the college had no record of anyone under that name having ever attended the school. However, the college, which at first agreed to send a facsimile transfer that would confirm the information, then refused to do so without a subpoena.

After trial, counsel also learned that Jenkins had never graduated from high school or received a GED in either Oregon or California. He also discovered that, in order to audit classes at SOC, one had to register and pay tuition and that there was no record of Jenkins ever auditing classes at the college. At the time Jenkins' husband attended SOC, it offered only two or three classes that could be construed as relating to child development. On the basis of that newly discovered evidence, defendant moved for a new trial. The state acknowledged that Jenkins lied about her education during the trial. The court denied defendant's motion.

Defendant argues that the denial of the motion for a new trial was an abuse of the court's discretion. She argues that Jenkins' lies about her background and qualifications were material, because it was Jenkins who arranged the interview with Bays and who offered substantive evidence of the things that the child could not remember. She argues that depriving the jury of information that Jenkins had lied about her background and credentials deprived it of evidence necessary to its deliberations.

■    The state argues that the evidence showing that Jenkins lied about her academic background did not qualify as newly discovered, because defense counsel had a copy of Jenkins' 1979 CSD employment application and that application did not list a junior college degree. It argues that the discrepancy in that application became known when Jenkins testified and that counsel immediately had the investigator begin checking Jenkins' background. It contends that defendant should have asked for a continuance in order to obtain more information. Relying on *State v. Varney*, 244 Or 583, 419 P2d 430 (1966), it argues that defendant's failure to move for a continuance precludes relief on appeal.

In *Varney*, the state failed to produce an informant who the defendant claimed was a material witness to his defense of entrapment. The defendant argued that the trial court's failure *sua sponte* to postpone the trial violated his constitutional right to confront witnesses. The Supreme Court held that that constitutional right does not imply a constitutional right to have a trial postponed because the whereabouts of a desired witness is unknown. It stated that the defendant had known that the witness was material and, in the absence of a motion for continuance, the defendant had nothing about which to complain. 244 Or at 586.

*Varney* is not analogous to the situation here. Defendant had no interest in calling Jenkins to testify. She was the state's witness. There was nothing suspicious about Jenkins' background in the information defendant received before trial. The state had provided defendant with Jenkins' application for employment with CSD. It did not list attendance at Citrus College. It was not until Jenkins testified that she had a degree from that school that there was any suggestion of a falsehood.

According to the state's position, any time any discrepancy arises between information provided before trial about a state's witness and testimony at trial, no matter how minor, counsel would be bound to move for a continuance in order to preserve a right to later object. As shown by this case, in the trial setting, that position is untenable.

The defense had to conduct its investigation while counsel was presenting the defense case and preparing for the

state's rebuttal. In his affidavit, counsel stated his opinion that there was not sufficient time before the conclusion of the trial to ascertain what person from Citrus College would have to be subpoenaed and to obtain an out-of-state subpoena, as well as the funds to transport the witness. Because he had difficulty believing that someone would lie about a degree from a two-year college taken 21 years earlier, he believed that there would need to be additional investigation to be certain that Jenkins had not attended the school under some other name.

We see no reason why, on these facts, counsel's tactical decision not to move for a continuance is determinative of whether the motion for a new trial should have been granted. Only the Citrus College degree was in question at the time of trial. Counsel had to determine whether a delayed challenge to a dated degree from a two-year college would be effective enough to justify the formidable difficulties in proving that Jenkins had lied.[2] A continuance is no substitute for immediate cross-examination that exposes the witness as a liar.

The state argues that, nonetheless, "Jenkins' educational background was collateral to the issue of whether she accurately conducted and recounted her interview of the [child]." We do not agree. An interview with a child to ascertain whether sexual abuse has occurred is not a simple question-and-answer session. The interviewer's ability to conduct the interview in a neutral manner so as not to taint the witness' response is crucial. A jury's assessment of that ability involves consideration of the interviewer's education and experience.

The importance of the interviewer's background was emphasized by Bays. She testified, on cross-examination, that it is important not to ask leading questions of the child. When asked if it was difficult not to be leading, her response was that it depended on the person and the person's training.

---

[2] At the hearing on defendant's motion for a new trial, the court stated that it would have granted a continuance had counsel moved for one. That assertion does not determine whether the court abused its discretion in not granting counsel's post-trial motion.

The state stressed the importance of Jenkins' background. On direct examination, it carefully established her credentials in handling sexual abuse matters. In explaining her background with CSD, she characterized sexual abuse matters as the "flavor" of her ten-year work experience. She claimed educational underpinnings in areas related to child development.

■   However, even if Jenkins' educational background was collateral, the fact that she lied about it is not. The lie about Citrus College was not isolated. Jenkins had dropped out of high school and had no GED. Her claim that she had taken or audited classes in child development at SOC was also a lie. The reliability of every aspect of her testimony would undoubtedly have been severely undermined by the disclosure that she had not completed any aspect of her formal education, lied about her education to CSD and was willing to lie about it in court.

■   The state argues, however, that any error was harmless. It contends that the issue is not Jenkins' education but whether the jury's knowledge of her lies would have led it to reject not just her testimony, but also the testimony of the day care provider and her daughter and Bays. It contends that the day care provider and her daughter testified about incriminating statements the child made before Jenkins ever had any contact with the child and that Bays' testimony is consistent with that testimony. Therefore, the state argues, it is "virtually certain" that the jury would have reached the same verdict even if it had rejected and ignored Jenkins' testimony.

We cannot agree with the state's assessment of the evidence. The testimony of Bays and the day care provider and her daughter was not conclusive. The testimony of the day care provider and her daughter was that the child had been seen masturbating, exposing her bottom to an adult and "humping" her younger brother, and that defendant had had her hand up the child's dress. The statements of the child were that defendant had "touched her" on the way to and from day care and that at night defendant had touched her "in her pee-pee" and on her bottom but that that touching had occurred to see if she was wet.

Bays' testimony was that, during the examination, the child had stated that, when she was asleep, defendant would come home from work and would touch her "pee-pee" to see if she "peed my bed or pooped my bed." Bays testified that the child had indicated that defendant had touched, with her finger, the child's clitoris, labia, lower abdomen and anus and had demonstrated the touching in the anal area by moving her index finger up and down. However, Bays also testified that the child had admitted that she did wet her bed and that she also had stated that her dad had touched her in the vaginal area. Bays admitted that the child's masturbation and exposing her bottom could be normal behavior.

We cannot say that the jury would have returned the same verdict without Jenkins' testimony. It was Jenkins who impeached the child's testimony, providing direct statements. Jenkins stated that the child was worried that her mother would put her finger inside the child's "pee-pee." Jenkins testified that the child's remarks were spontaneous, that she wanted to talk about what had happened and that she was "ready to disclose." We cannot say that, had the jury known that Jenkins had lied to CSD and in court about her educational training, its assessment of the evidence that resulted from the initial interview would undoubtedly have been the same. Defendant's motion for a new trial should have been granted.

Because of our disposition of this assignment, we need not address defendant's other assignments of error.

Reversed and remanded for a new trial.