Argued and submitted January 7, decision of the Court of Appeals reversed; case remanded to the Court of Appeals for further consideration September 15, reconsideration denied November 22, 1994

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# DEBRA LYNN ARNOLD,
*Respondent on Review.*

## (CC C90-11-36757; CA A70340; SC S40291)

879 P2d 1272

Brenda JP Rocklin, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Douglas F. Zier, Assistant Attorney General, Salem.

Susan Elizabeth Reese, of Reese & Goffredi, Portland, argued the cause and filed the response for respondent on review.

VAN HOOMISSEN, J.

Fadeley, J., dissented and filed an opinion.

Durham, J., dissented and filed an opinion in which Fadeley, and Unis, JJ., joined.

## VAN HOOMISSEN, J.

The issue in this criminal case is whether the trial court erred in denying defendant's post-trial motion for a new trial. More specifically, we are called on to consider how ORCP 64 B(4),[1] a rule that allows a trial court to order a new trial based on "newly discovered" evidence, applies to evidence discovered *during* trial. The Court of Appeals held that the trial court erred in denying defendant's motion for a new trial. *State v. Arnold*, 118 Or App 64, 71, 846 P2d 418 (1993). For the reasons that follow, we disagree and reverse.

Grundy, a daycare provider who was concerned that defendant's four-year-old daughter might have been sexually abused, contacted Children's Services Division (CSD). Jenkins, a CSD social worker, interviewed the child. After further investigation, defendant was charged with four counts of sexual abuse in the first degree. ORS 163.427.

At trial, the child testified that defendant, her mother, had touched her vaginal area, but "[o]nly to see whether I was wet or not." The state then called CSD's Jenkins to show that the child's testimony differed from her earlier statements to Jenkins. Jenkins began her direct testimony by relating that she came to CSD "with a background in child development." She discussed at length her experience with CSD. Jenkins then testified about the statements that the child had made about defendant's inappropriate touching. She also described the child's use of anatomically correct dolls to demonstrate where defendant had touched her. Four other witnesses, including defendant's own expert, also testified about the child's out-of-court statements describing the touching. Physical evidence corroborated the child's statements.

---

[1] ORCP 64 B(4) provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"* * * * *

"(4) Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial."

ORCP 64 B applies to criminal cases. ORS 136.535(4).

Before trial, defense counsel had subpoenaed Jenkins' personnel records from CSD. In response, CSD provided only Jenkins' 1979 employment application. That application asked whether the applicant has "a high school diploma or a GED Certificate." Jenkins had marked, "Yes." In the space to indicate colleges attended, Jenkins had written:

"I audited seven classes while my husband was an undergraduate student at SOC [Southern Oregon College] — all classes pertained to child development."

That was the only information that the 1979 application contained about Jenkins' education.

On cross-examination, defense counsel asked Jenkins about her educational qualifications. Jenkins stated that she had a high school diploma and that she had earned an associate's degree in early childhood education from Citrus College in California in 1965. She further stated that she had audited seven classes pertaining to child development at Southern Oregon College. Defense counsel cross-examined Jenkins at length about the disparity between her 1979 CSD employment application, which listed no junior college degree, and her testimony at trial. Jenkins was the final witness in the state's case-in-chief.[2]

Immediately after the state completed its case-in-chief on March 18, Hamilton, defendant's investigator, contacted Citrus College by telephone and was told that the college had no record of a Lynn Jenkins ever having attended there. Citrus College agreed to send a facsimile transfer to Hamilton that same day that would confirm the information. The college did not do so, however. Hamilton gave that information to defense counsel the same day.[3] Because it was determined later that Jenkins' birth name was Spalding, another defense investigator, Halloran, placed a telephone

---

[2] Jenkins finished testifying before noon on Monday, March 18, 1991. The defense presented its case-in-chief on the afternoon of March 18 and on March 19. The parties gave their closing arguments on March 20, and the jury returned its verdict on March 21.

[3] Hamilton concluded during trial that she had a conflict of interest, because of her past friendship with Jenkins. Hamilton telephoned Jenkins and told her that defense counsel was "going to dig into [Jenkins'] background." Hamilton also told Jenkins that defense counsel "knows you did not attend Citrus College."

call to Citrus College and inquired whether a Lynn Spalding had attended there. He was told that the college had no record of a Lynn Spalding ever having attended. That information also was given to defense counsel during trial. The college also told the investigator that it would confirm the information only if required to do so by a subpoena.

Possessing that information, which gave defense counsel reason to believe that there was a material discrepancy in Jenkins' testimony about her academic qualifications, defense counsel nonetheless did not bring that information to the attention of the trial court, did not ask for a continuance to subpoena any records from Citrus College or to investigate Jenkins' other academic qualifications, did not attempt to recall Jenkins as a witness, and did not attempt to call either defense investigator as a rebuttal witness.

During a recess at trial, defense counsel told the prosecutor that he was "having difficulty in obtaining confirmation that Ms. Jenkins had in fact attended [Citrus College]." Defense counsel did not say anything more to the prosecutor during trial about Jenkins' testimony.[4] At the post-trial hearing on defendant's motion for a new trial, the prosecutor testified that he assumed that the matter had been cleared up and that it no longer was an issue or that defense counsel did not feel that it was important enough to pursue further. Defendant does not argue that the prosecutor was aware during trial that Jenkins may have testified falsely.

The jury returned a verdict of guilty on all four counts. Before sentencing, defendant moved for a new trial, citing ORCP 64 B(4) and arguing that she had "newly discovered" evidence that Jenkins had lied about her academic

---

[4] Defense counsel argued during closing argument about Jenkins' job application, training, and experience:

"Now, I don't want to say that this woman is getting up there and fibbing. I certainly hope not. I mean, I don't want to see anybody get up there and do that — that's perjury. She could be exaggerating. Or maybe she's lying. I don't know. But if you find that a witness is not telling the truth in one particular instance, you're entitled to disregard all of their testimony."

The trial court instructed the jury that it was the sole judge of the credibility of the witnesses and that a witness false in part could be distrusted as to all of his or her testimony.

qualifications.[5] In affidavits, defendant asserted: there was no record that Jenkins had ever attended Citrus College; Citrus College did not offer a degree in early childhood education in the 1960s; Southern Oregon College had no record that Jenkins had ever audited any classes there; and Jenkins did not have even a high school diploma.

After a hearing, the trial court found that Jenkins had lied about her educational background. The court then stated:

"This is not a case in which new evidence cropped up after the trial was completed, in which case the focus of the inquiry would properly be on whether the evidence should have been discovered before trial. Rather, this is a case that involves evidence that occurred during and was discovered during trial in the middle of the trial and which could have been presented to and resolved by the jury that was considering the facts of the case. * * * The defense knew that there was a major discrepancy in Ms. Jenkins' academic credentials during trial on March 18th. Indeed, defense counsel cross-examined Ms. Jenkins to some extent about the discrepancies between her testimony and the credentials that she had reported years earlier in her job application form. I'm satisfied from the evidence that the defense investigators immediately got onto the problem and either, later in the day on March 18th or early March 19th, the following day, still during the middle of the trial, the defense was fully aware that there appeared to be no records at Citrus College showing Ms. Jenkins had attended or graduated. And because this evidence was known during the trial, the relevant question is what should have been done about it during trial, not what should have been done about it after trial.

"It's my opinion that the defense should have alerted the court to the problem and requested relief from the court in the form of a motion for a continuance or delay in the proceedings or requested assistance from the court in the form of court process in order to secure out-of-state witnesses which I realize is a cumbersome procedure but nevertheless, it should have been considered."

The trial court concluded that the evidence of Jenkins' false testimony was not discovered after the trial, that the evidence

---

[5] The state conceded in its response to defendant's motion for a new trial that Jenkins had lied about her education.

about Jenkins' educational background was not such as would probably change the result if a new trial were granted,[6] and that defense counsel's decision not to raise the matter during trial precluded the requested relief.[7] Accordingly, the trial court denied defendant's motion.

On appeal, the Court of Appeals concluded that the evidence forming the basis for defendant's motion was newly discovered. The court stated:

"We see no reason why, on these facts, counsel's tactical decision not to move for a continuance is determinative of whether the motion for a new trial should have been granted. Only the Citrus College degree was in question at the time of trial. Counsel had to determine whether a delayed challenge to a dated degree from a two-year college would be effective enough to justify the formidable difficulties in proving that Jenkins had lied. A continuance is no substitute for immediate cross-examination that exposes the witness as a liar." *State v. Arnold, supra*, 118 Or App at 69 (footnote omitted).

The Court of Appeals held that, in the light of what it perceived to be the importance of Jenkins' testimony to the state's case, the error was not harmless. *Id.* at 71. Accordingly, the court ordered a new trial. *Ibid.* We allowed the state's petition for review.

The state contends that the Court of Appeals erred in reversing the trial court, noting that defense counsel's investigation into Jenkins' educational background began immediately after she finished testifying at noon on March 18 and that defense counsel knew, or had reason to believe, on the same day that Jenkins testified, that she had not attended Citrus College. Thus, the evidence having been discovered, the burden was on defendant to show that that evidence could

---

[6] The trial court found that Jenkins' false testimony applied only to her educational background about 25 years earlier and that her academic credentials were not central to her testimony or to the issues decided by the jury. The court concluded, based on the record as a whole, that the jury did not give much weight to Jenkins' testimony about her educational background.

[7] The trial court relied primarily on *Moore v. Adams*, 273 Or 576, 579, 542 P2d 490 (1975) (a party who learns facts regarding irregularity which occurred during trial should promptly inform the trial court of such facts), and *State v. Gardner*, 33 Or 149, 153, 54 P 809 (1898) (a party must immediately apply for a postponement of the trial when the surprise occurred). *See also State v. Varney*, 244 Or 583, 586, 419 P2d 430 (1966) (defendant's failure to move for a continuance precludes relief on appeal).

not have been "produced" at the trial. ORCP 64 B(4). Defendant offered no such evidence.

The state also argues that the evidence on which defendant relied as the basis for her post-trial motion for a new trial was not, in fact, "newly discovered" within the meaning of ORCP 64 B(4). Therefore, the state posits, the trial court had no discretion to exercise and, thus, no authority to grant defendant's motion. The state asserts that the Court of Appeals' conclusion rewards a trial counsel's failure to conduct a mid-trial investigation and, thus, encourages a party to gamble on the verdict.[8]

Defendant argues, first, that ORCP 64 B(4) does not apply to evidence discovered *during* trial. Defendant next argues that the passage of time would have altered the impact that could have been made by a vigorous and contemporaneous cross-examination of Jenkins at trial. Defendant posits that a new trial is the only effective remedy for Jenkins' alleged untruths, because a motion for a continuance would not have cured the lost opportunity for effective cross-examination.

In *Oberg v. Honda Motor Co.*, 316 Or 263, 851 P2d 1084 (1993), *rev'd on other grounds* ___ US ___, 114 S Ct 2331, 129 L Ed 2d 336 (1994), the defendants argued for a new trial based on the discovery, after trial, of two eyewitnesses to part of the incident giving rise to the plaintiff's injury. This court stated:

> "This court has not previously considered what factors a trial court should weigh in ruling on a motion for a new trial, under ORCP 64 B(4), based on the discovery of new evidence. ORCP 64 B(4) is, however, materially identical to *former* OCLA 5-802(4) and *former* ORS 17.610(4). In reviewing the denial of motions made under those statutes, this court consistently stated that applications for a new trial based on newly discovered evidence are not favored and that the grant or denial of such motions is within the sound discretion of the trial court. *See Skoog v. Minkoff*, 260 Or 148, 150-51, 488

---

[8] The state also argues that, *even if* the trial court had discretion under ORCP 64 B(4) to grant defendant's motion, the court articulated good reasons for denying defendant's motion and, therefore, did not abuse its discretion in doing so. Because we hold that the evidence on which defendant relies was not "newly discovered" after the trial within the meaning of ORCP 64 B(4), we need not address that additional argument.

P2d 1364 (1971) (stating that principle); *Larson v. Heintz Const. Co.*, 219 Or 25, 72, 345 P2d 835 (1959) (same); *Newbern v. Exley Produce Express*, 208 Or 622, 630-33, 303 P2d 231 (1956) (same); *State v. Davis*, 192 Or 575, 579, 235 P2d 761 (1951) (same). In *State v. Davis, supra*, 192 Or at 579, this court stated:

> " 'Newly discovered evidence which will justify a court in granting a new trial must meet the following requirements:
>
>> " ' "(1) It must be such as will probably change the result if a new trial is granted;[9] (2) it must have been discovered since the trial; (3) it must be such as, with due diligence, could not have been discovered before the trial; (4) it must be material to the issue; (5) it must not be merely cumulative; (6) it must not be merely impeaching or contradicting of former evidence. § 5-802, O.C.L.A. (Citation omitted.)" ' " *Oberg v. Honda Motor Co., supra*, 316 Or at 272-73.

Because of the facts giving rise to the motion in *Oberg*, the question of how ORCP 64 B(4) would operate for evidence discovered and producible *during* trial was not presented or decided in that case. We therefore address for the first time defendant's argument that ORCP 64 B(4) does not apply to evidence first discovered during trial.

ORCP 64 B(4) is a statute. In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020. To do that, this court examines both the text and context of the statute. The text of the statute is the starting point for interpretation and is the best evidence of the legislature's intent. If the legislature's intent is clear after an inquiry into text and context, further inquiry is unnecessary. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

ORCP 64 B(4) provides that a new trial may be granted on the basis of newly discovered evidence, which the moving party "could not with reasonable diligence have discovered and produced at the trial." The "reasonable diligence" inquiry under ORCP 64 B(4) does not focus on whether the evidence was discovered before trial; rather, it

---

[9] This court has held that perjury alone is not a ground for a new trial. *Larson v. Heintz Const. Co.*, 219 Or 25, 70, 345 P2d 835 (1959).

focuses on whether the party could not with reasonable diligence have discovered and produced the evidence at the trial. *See State ex rel Nilsen v. Adams*, 248 Or 269, 274, 431 P2d 270 (1967) (under former statute, motion for new trial was properly denied where reasonable diligence before the conclusion of trial would have uncovered the evidence).[10]

■    Nothing in the text of ORCP 64 B(4) suggests that evidence discovered during trial is not covered by that rule. Moreover, all the other justifications for granting a new trial mentioned in different sections of ORCP 64 B also include circumstances that might arise during trial. *See* ORCP 64 B ("party was prevented from having a fair trial," "misconduct of the jury or prevailing party," "accident or surprise which ordinary prudence could not have guarded against," "insufficiency of the evidence to justify the verdict or other decision, or that it is against law," "error in law occurring at the trial and objected to or excepted to by the party making the application"). Both the text and context of ORCP 64 B argue against defendant's assertion that ORCP 64 B(4) does not apply to evidence discovered during trial.

■    Consequently, and consistent with *Oberg*, we hold that evidence that may justify a court in granting a new trial must meet the following requirements:

(1)    It must be such as will probably change the result if a new trial is granted;

(2)    It must be such as, with reasonable diligence, could not have been discovered before or during the trial;[11]

(3)    It must be such that it cannot, with reasonable diligence, be used during trial;

(4)    It must be material to an issue;

[10] Defendant's reliance on *State v. Evans*, 98 Or 214, 224, 193 P 927, 192 P 1062 (1920), is misplaced. In *Evans*, the evidence was not available during trial and therefore the question of "reasonable diligence" was not an issue.

[11] Because ORCP 64 B(4) speaks of evidence that "could not with reasonable diligence have [been] discovered and produced at trial," and because, as this case demonstrates, such discovery and use of the evidence could occur entirely during a trial, it follows that our reference in *Oberg* to evidence discovered "before" trial more properly should have referred to evidence discovered "before or during" trial.

(5) It must not be merely cumulative;

(6) It must not be merely impeaching or contradicting of former evidence.

Having held that ORCP 64 B(4) applies to evidence discovered during the trial, we proceed to consider the state's argument that defendant's "newly discovered" evidence would not have justified the award of a new trial under ORCP 64 B(4) and, therefore, that the trial court had no discretion to exercise and, thus, no authority to grant defendant's motion. For the sake of discussion only, we assume that the evidence here met requirement (1), stated above, although the trial court expressly concluded that it did not. The parties do not argue that requirements (4) and (5) are not met. The state does not argue that the evidence is "merely impeaching" under requirement (6). We therefore focus our attention primarily on requirements (2) and (3).

■    It is undisputed that, on cross-examination during the state's case-in-chief, defense counsel identified a major discrepancy in Jenkins' testimony about her academic qualifications. Counsel had a copy of Jenkins' 1979 CSD job application form that contradicted her testimony. Further, it is undisputed that, well before the case was submitted to the jury, defense counsel had specific information from his investigators that Citrus College denied that Jenkins had ever attended there. Defense counsel also knew that Citrus College's confirmation of that fact would not be provided except in response to a subpoena. Thus, during trial, defense counsel knew of evidence about Jenkins' academic qualifications and how to obtain that evidence.

This case is a dispute over *how much* evidence had to be known and had to be usable during trial to make the balance of the evidence not such as would justify the award of a new trial. Even if some additional evidence is discovered after trial, it does not justify the award of a new trial if the evidence that was known during trial could have been used during trial for substantially the same purpose as the additional evidence that is not discovered until after trial.

We conclude that the evidence that Jenkins had not attended Citrus College did not justify the award of a new trial under ORCP 64 B(4) at the time that defendant asked

the trial court to grant her a new trial. Although defendant does not specifically argue that a new trial should have been ordered based solely on the post-trial discovery that Jenkins had not graduated from high school and had not audited classes at Southern Oregon College, we conclude that she could have used what she already knew about Jenkins' not having attended Citrus College for substantially the same purpose. Therefore, the post-trial discovery of the latter information does not satisfy the requirement that the evidence must be such as, with reasonable diligence, could not have been discovered and produced at trial.

Because the evidence on which defendant relied was not such as would have justified the award of a new trial under ORCP 64 B(4), the trial court did not err in denying defendant's motion for a new trial. The Court of Appeals erred in holding otherwise.

The Court of Appeals' decision rested solely on its conclusion that defendant's motion for a new trial should have been granted. That court therefore did not address defendant's other assignments of error. *State v. Arnold, supra,* 118 Or App at 71. Accordingly, we remand this case to the Court of Appeals for consideration of defendant's other assignments.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further consideration.

**FADELEY, J.,** dissenting.

I join fully in the dissent of Durham, J., and also wish to contribute the following points to the future discussion of this case, erroneously decided in my opinion.

As the majority points out, at trial the child contradicted witness Jenkins. Jenkins' credibility was crucial on the points made in her testimony. If the trial had shown the pervasive nature of Jenkins' falsehoods about her educational experience and background in the child abuse field, the statutory instruction to the jury — found in ORS 10.095(3), declaring that a witness found to be false in one part of her testimony should not be trusted to tell the truth in other parts of her testimony — would have struck the jury with its

full force, probably altering the outcome of the case. In my opinion, application of that statutory admonition about false testimony to this case also makes the trial verdict of conviction unreliable and unfair, because it was arrived at without juror knowledge of the falsity.

At bottom, the decision of the trial court to deny the motion for a new trial turned on the premise that defendant should have sought a continuance, on some articulable basis, when she first suspected that Jenkins had lied about any part of her educational background. The trial court thus placed responsibility for the perjured testimony, and its effect, on the defendant who did not offer that testimony. In my opinion, it is the state's responsibility to prove the case by credible testimony. The trial court excused the state from that responsibility.

The majority echoes and justifies this shift in responsibility from prosecution to defense by reading additional words into ORCP 64 B that are not found there. As a judge, I am not willing to employ blame-shifting as the "principled reasoning" that explains or justifies shifting the burden of proof to a criminal defendant. However, absent that blame-shifting explanation and the burden-shifting that is based on it, the result in this case would be seen as unlawful.

Moreover, the usual analysis for adding words to a statute is not followed here. This court requires an analysis based on *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), where words are to be added to a statute. Although that case was cited by the majority, the analysis that is directed by that case was not performed before the majority added the words "during trial" after the word "discovered" in the ORCP. *See State v. Arnold*, 320 Or 111, 117-18, 879 P2d 1272 (1994). Where is the stated ambiguity and, thereafter, the demonstration of legislative intent that would be required to allow that addition under the rule of *PGE v. Bureau of Labor and Industries, supra*?

I dissent.

**DURHAM, J.,** dissenting.

In her motion for a new trial, defendant demonstrated that she was convicted on the strength of repeated lies

by a critical state witness and that she discovered most of those lies after trial. Those facts call into question the fairness of the trial that produced the criminal convictions. Because I would not disturb the decision of the Court of Appeals to remand for a new trial, I dissent.

Defendant stands convicted on four counts of first degree sexual abuse. The conviction was secured through the state's use of testimony from a pivotal witness, Jenkins, who was a child abuse investigator and who, as the state concedes, lied about her educational background. Jenkins testified that she interviewed the victim and that the victim made statements incriminating defendant. Another witness, Dr. Bays, relied in part on Jenkins' interview in forming her opinion that was adverse to defendant. It cannot be gainsaid that, under these circumstances, Jenkins' education and training were crucial to her ability to conduct an interview that was free of leading questions or other suggestive tactics and that produced reliable statements by the interviewee.

During trial, defendant's lawyer learned that a representative of Citrus College had told defense investigators that the college had no record that a "Lynn Jenkins" or a "Lynn Spalding" had attended there. In that form, the information was unusable in court. The college's representative said that the college would verify the information only through a subpoena. Defense counsel did not seek a subpoena or a postponement on the basis of the information, but continued to investigate Jenkins' educational background during and after trial. Defense counsel asserted, in the motion for new trial, that

> "[t]he post-trial investigation into Lynn Jenkins' background required examining current and past voter registration records; marriage and divorce records; numerous calls to the registrar's [sic] of the two colleges in question; an interview with Lynn Jenkins' ex-husband in order to ascertain the name and location of the high school Ms. Jenkins had attended, her lack of other education, her use of no other names other than her maiden name, and her failure to obtain a GED up to the time of their separation; and, an examination of the relevant portions of the college catalogs from Southern Oregon College pertaining to the years during which the school had been attended by Mr. Jenkins."

Defendant's motion for a new trial asserted that the post-trial investigation produced newly discovered evidence, which the majority describes as follows:

"[T]here was no record that Jenkins had ever attended Citrus College; Citrus College did not offer a degree in early childhood education in the 1960s; Southern Oregon College had no record that Jenkins had ever audited any classes there; and Jenkins did not have even a high school diploma." 320 Or at 116.[1]

What that description omits is the fact that, whereas the information discovered during trial suggested a factual discrepancy in Jenkins' testimony that might be explained in a host of ways,[2] the post-trial investigation developed new evidence that *Jenkins had lied extensively during her testimony about her educational background.*

The new trial motion was based on ORCP 64 B(4), which provides:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"* * * * *

"(4)  Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial."

The rule requires an analysis of the *evidence* that the movant asserts is *newly discovered.* Neither the trial court nor the majority makes the inquiries required by the rule to determine whether the motion satisfies all of the requirements of the rule. The majority, instead, analyzes the factual discrepancy about Jenkins' testimony that came to light during trial.

---

[1] She also contended that, in response to pre-trial subpoenas *duces tecum* for Jenkins' personnel records, the state failed to produce all pertinent documents in its possession.

[2] For example, Jenkins may have attended Citrus College under some name other than Jenkins or Spalding, or the college may have performed an incomplete or inaccurate search of its records, due perhaps to a miscommunication with defense counsel's investigators. The evidence that could prove that Jenkins' testimony was not the result of an innocent mistake was not discovered until after trial.

As a result, the majority finds it necessary to address a non-issue, *i.e.*, whether ORCP 64 B(4) "applies to evidence discovered *during* trial." 320 Or at 113 (emphasis in original).[3] To resolve that purported issue against defendant, the majority alters the prerequisites for a new trial motion that have been a part of our case law for many decades. The alteration is not necessary or warranted. If the evidence on which the motion is based was discovered and producible *during* trial, it is not evidence discovered *since* the trial.

The majority fails to give adequate consideration to the changes that it makes in the traditional standards for assessing whether a movant's proffered evidence is newly discovered. The majority alters the second and third requirements from *Oberg v. Honda Motor Co.*, 316 Or 263, 272-73, 851 P2d 1084 (1993), *rev'd on other grounds* ___ US ___, 1145 S Ct 2331, 129 L Ed 2d 336 (1994), which say:

"(2) [I]t must have been discovered since the trial; (3) it must be such as, with due diligence, could not have been discovered before the trial[.]"

The majority changes those requirements to say:

"(2)   It must be such as, with reasonable diligence, could not have been discovered before or during the trial;

"(3)   It must be such that it cannot, with reasonable diligence, be used during trial[.]" 320 Or at 120 (footnote omitted).

Under *Oberg*, the second factor required the court to determine one fact: whether the evidence was discovered since the trial. That is the correct standard, because only evidence discovered *since* the trial can qualify as newly discovered evidence. The majority's second requirement combines parts of the second and third *Oberg* requirements and expands them. It requires the court to determine whether the movant used reasonable diligence to discover evidence

---

[3] The majority may be more confused about the issue that it decides than the quoted statement would indicate. The majority also says:

"This case is a dispute over *how much* evidence had to be known and had to be usable during trial to make the balance of the evidence not such as would justify the award of a new trial." 320 Or at 121 (emphasis in original).

That statement makes no sense. If this case only concerns the quantum of evidence necessary to justify a new trial, the majority has no reason to alter the legal requirements for demonstrating that evidence is newly discovered.

"before or during the trial." The majority does not explain why that change is necessary. In fact, it is not necessary because; under the traditional standard expressed in *Oberg*, unless evidence is discovered *since* the trial, it cannot be newly discovered evidence. Under the text of ORCP 64 B(4), if the movant could have discovered and produced the proffered evidence at trial, the evidence does not qualify as newly discovered evidence. The majority's reformulation of the second *Oberg* requirement is an error.

The majority's new third requirement focuses on the movant's reasonable diligence to *use* the evidence during trial. Nothing in the *Oberg* factors mentions *use* of the evidence at trial, through reasonable diligence or otherwise. *Oberg* states the correct standard, because the inquiry under ORCP 64 B(4) is whether the moving party reasonably could have discovered and produced the evidence at the trial. The majority's new third requirement diverts the court's inquiry under ORCP 64 B(4) from *discovery and production* of evidence at trial, to *use* of evidence at trial. That modification is unnecessary and erroneous. It appears that the majority is intent on rewriting the traditional criteria for newly discovered evidence whether its novel formulation is needed or not.[4]

Overshadowing the majority's unnecessary alteration of the requirements in *Oberg* is the majority's departure from, or *sub silentio* modification of, our template in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), for analyzing the legislative intention behind words in a statute. The majority holds that ORCP 64 B(4) is a statute. The rule refers to "newly discovered evidence." In *Oberg*, this court has authoritatively interpreted that phrase as meaning evidence that meets the six criteria specified in *Oberg*. That interpretation of the meaning of the phrase "newly discovered evidence" is binding on this court under the doctrine of *stare decisis* and becomes a part of the rule. *Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992).

---

[4] Because the majority has altered the second and third requirements from *Oberg*, it should not affirm the trial court's order denying a new trial. Defendant has had no opportunity to demonstrate that her evidence is newly discovered under the new criteria announced by the court in this case. Moreover, neither the trial court nor the Court of Appeals has applied those standards to the evidence that defendant asserts is newly discovered.

The majority violates the *PGE* methodology, because it fails to begin its analysis with the text of the rule, as this court interpreted the text in *Oberg*. The majority asserts that "[n]othing in the text of ORCP 64B(4) suggests that evidence discovered *during* trial is not covered by that rule." 320 Or at 120 (emphasis added). That is not correct, because *Oberg* holds that "newly discovered evidence" means evidence that "must have been discovered since the trial" and "must be such as, with due diligence, could not have been discovered before the trial." 316 Or at 272-73. Those phrases are a part of the rule as if written in at the time it was enacted. However, the majority sees fit to change them to meet the facts of this case. If it were faithful to the *PGE* methodology, the majority would recognize that the text and context of ORCP 64 B(4) do not include the phrases that it desires to insert into the rule. As a result of the majority's error, the rule now reflects the intention of the majority of this court, not the intention of the legislature. The *PGE* methodology was designed to prevent that sort of judicial legislation. Defendant may rightfully ask why this court has seen fit to abandon its usual scheme for analyzing the words in a statute.

The majority concludes that defendant "could have used what she already knew about Jenkins' not having attended Citrus College for substantially the same purpose" as the evidence she discovered after trial and, for that reason, the evidence was not "such as, with reasonable diligence, could not have been discovered and produced at trial." 320 Or at 122. That analysis is flawed.

The court's reasoning disregards the realities of cross-examination of a pivotal witness like Jenkins. During this trial, defense counsel knew only of the discrepancy regarding Jenkins' attendance at Citrus College, but possessed no evidence to prove that she was lying about that fact during her testimony. Assuming arguendo that defendant's counsel had obtained that evidence during a trial continuance, defendant still has a strong interest in proving at trial that Jenkins told several *other* lies about her educational background. Those lies were not discovered until after trial. By focusing only on the lawyer's awareness during trial of one discrepancy in Jenkins' testimony about whether she had attended Citrus College, the majority fails to mention, let

alone analyze, whether the *other* evidence, which was discovered after trial and offered in support of the motion, is newly discovered within the meaning of ORCP 64 B(4). The motion shows that defendant's lawyer learned after trial that Citrus College offered no degree in early childhood education in the 1960s, that Southern Oregon College has no record that Jenkins audited any classes there and that Jenkins had no high school diploma. The majority makes no showing that a continuance of the trial to resolve the discrepancy about Jenkins' attendance at Citrus College would have resulted in discovery of evidence of those other facts. By using the newly discovered evidence of those additional facts in cross-examining Jenkins, the lawyer could establish that Jenkins told multiple lies about her background and not simply one falsehood about her attendance at Citrus College. There is no issue here about merely cumulative evidence. The lawyer's objective was to destroy Jenkins' credibility. Undoubtedly, evidence that Jenkins had lied several times would achieve that objective much more effectively than would evidence of a single lie. For that reason, the majority errs in saying that defendant could have used what she knew about the discrepancy concerning Jenkins' attendance at Citrus College for substantially the same purpose as the other evidence that she discovered after trial.

The majority's error affects more than defendant's right effectively to cross-examine Jenkins. It also affects her right effectively to attack the credibility of another important witness for the state. Dr. Bays relied in part on Jenkins' interview of the victim in forming her own opinion. The exposure of Jenkins' multiple lies during trial could have led the jury to reject both Jenkins' and Dr. Bays' testimony. Moreover, when Jenkins was confronted with the discrepancies in her testimony at the hearing on the motion for new trial, she asserted her constitutional right to remain silent. If that had occurred during cross-examination at trial, the court may well have faced a motion to strike her entire testimony, because the assertion of that right prevented cross-examination. If the jury had rejected both Jenkins' testimony describing the victim's incriminating statements and the testimony of the state's medical expert, the result of the trial easily could have been different.[5]

---

[5] The outcome of this case should not turn on the trial court's statement that the evidence about Jenkins' educational background was not such as would probably

I cannot join in the majority's failure to analyze the evidence on which the new trial motion was based or in its unnecessary alteration of settled law to sustain the trial court's action here. My analysis of the motion for new trial indicates that the proffered evidence is newly discovered evidence under the *Oberg* requirements, as well as the majority's reformulation of those requirements, and that it satisfies ORCP 64 B(4).

The traditional high standards for a new trial, which I support, should not impede a court from granting a new trial when it appears that the defendant has discovered, after trial, that a pivotal state witness lied extensively to the jury about important facts. Perjury undermines the very heart of our jury system. In this case, the stain of perjury calls into question the validity of defendant's convictions. Because the Court of Appeals correctly remanded for a new trial, I would affirm.

I dissent.

Fadeley and Unis, JJ., join in this dissenting opinion.

---

change the result if a new trial were granted. The trial court supported that statement with observations that Jenkins' description of her educational credentials was not central to her testimony and that the jury gave little weight to that testimony. The court did not explain how it could know of, rather than speculate about, those facts, because the jury never disclosed its reaction to any aspect of Jenkins' testimony.