Submitted on remand from the Oregon Supreme Court December 9, 1994, reversed and remanded for new trial April 12, 1995

## STATE OF OREGON,
*Respondent,*

*v.*

## DEBRA LYNN ARNOLD,
*Appellant.*

## (C90-11-36757; CA A70340)

893 P2d 1050

Susan Elizabeth Reese argued the cause for appellant. With her on the brief was Reese & Goffredi.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

The Supreme Court has remanded this case for consideration of defendant's remaining assignments of error after it held that we erred in reversing defendant's convictions when defendant discovered, after trial, the extent to which a state's witness, Lynn Jenkins, had lied in her testimony. Defendant was convicted of four counts of sexual abuse in the first degree. The victim was defendant's four-year-old daughter. The facts are set forth in our opinion at 118 Or App 64, 846 P2d 418 (1993), and in the Supreme Court's opinion at 320 Or 111, 879 P2d 1272 (1994). We need not repeat them here.

■ Defendant's first assignment is that the trial court erred in allowing hearsay statements that the victim made to Dr. Bays, a pediatrician and director of the Child Abuse Response and Evaluation Services (CARES) program at Emmanuel Hospital. The trial court held that the evidence was admissible under ORS 803(4) as an exception to the hearsay rule for statements made for the purposes of medical diagnosis or treatment.

■ In similar factual settings, we and the Supreme Court have held admissible hearsay statements made, often to Bays or others from the CARES program, by a sexual abuse victim during the course of treatment. *See State v. Barkley*, 315 Or 420, 846 P2d 390 (1993); *State v. Booth*, 124 Or App 282, 862 P2d 518 (1993), *rev den* 319 Or 81 (1994); *State ex rel Juv. Dept. v. Cornett*, 121 Or App 264, 855 P2d 171 (1993), *rev dismissed* 318 Or 323 (1994); *State v. Verley*, 106 Or App 751, 809 P2d 723, *rev den* 311 Or 644 (1991); *State v. Logan*, 105 Or App 556, 806 P2d 137, *rev dismissed* 312 Or 16 (1991); *State v. Vosika*, 83 Or App 298, 731 P2d 449, *mod* 85 Or App 148, 735 P2d 1273 (1987). However, defendant is correct that admissibility under OEC 803(4) must be determined on a case-by-case basis. *Barkley*, 315 Or at 424.

We have considered whether the statements meet the three requirements of OEC 803(4) noted in *State v. Moen*, 309 Or 45, 55, 786 P2d 111 (1990), and conclude that they do. The victim's statements were made for purposes of medical diagnosis or treatment, described medical history and were

reasonably pertinent to diagnosis or treatment. The trial court did not err in admitting the statements.

■     Defendant next assigns error to the admission of the testimony by Jenkins, the caseworker from the Children's Services Division who first interviewed the victim. The state had called the victim as a witness, but the victim testified that she did not know or could not remember earlier events and statements. She testified that defendant checked her diaper at night to see if she was wet but specifically denied that defendant put her finger in the victim's anus.

The state then informed the court that it would call Jenkins to testify, essentially to impeach the victim's testimony by prior inconsistent statements. The trial court ruled that Jenkins' evidence was "not hearsay" under OEC 801(4), which provides:

"A statement is not hearsay if:

"(a)    The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"(A)    Inconsistent with the testimony of the witness and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]"

OEC 801(4)(a)(A) changed Oregon law, which had admitted prior inconsistent statements for the purpose of impeachment but not as substantive evidence. Laird C. Kirkpatrick, *Oregon Evidence,* 488 (2d ed 1989). However, the prior inconsistent statement must satisfy the conditions of OEC 801(4)(a)(A), and defendant is correct that they were not met here. The victim's statements to Jenkins were not made under oath or at any earlier proceeding. The court erred in admitting the testimony as substantive evidence under OEC 801(4)(a)(A).

■     The state argues, however, that it was entitled to impeach the victim's inconsistent testimony under OEC 607, which provides:

"The credibility of a witness may be attacked by any party, including the party calling the witness."

Defendant contends that the evidence here is not admissible under OEC 607. She argues that Jenkins' testimony was not

limited to impeachment facts but, instead, was extensive and elaborate testimony that not only described the alleged abuse but also identified defendant as the perpetrator. Defendant contends that when, as here, impeachment evidence might be considered as substantive evidence, a limiting instruction should be given, *see State v. Gill*, 3 Or App 488, 474 P2d 23, *rev den* (1970), and that none was given here.

The state argues that defendant may not object to the failure to give a limiting instruction, because she did not bring the issue to the trial court's attention. However, defendant had no basis on which to request such an instruction in the light of the trial court's ruling that the evidence was substantive. The state may not, on appeal, seek to sustain the admission of the evidence on the ground that it could have been admitted for impeachment when, at trial, defendant was denied an opportunity to limit the jury's consideration to that basis.

■     The state also argues that the major part of Jenkins' testimony would have been admissible under OEC 803(18a)(a).[1] We do not agree. Jenkins' testimony went beyond a statement that the complaint had been made. She provided an elaborate description of the alleged abuse and identified defendant as the perpetrator. She testified, *inter alia*, that the victim said she was "worried about that [defendant] comes in her bedroom at night and puts her finger inside her pee-pee while she is asleep," and that the victim's statement was "pretty spontaneous * * * [the victim] was ready to disclose. She would have told probably anybody." Jenkins also testified that the victim complained it "happened in the car going different places" and that, when Jenkins asked the victim to show with an anatomically correct doll where defendant touched her at night, the victim put a hand of the mother doll into the vaginal opening of the child doll.

■ ■     Nonetheless, the state contends that Jenkins' evidence was merely cumulative of other evidence that showed

---

[1] OEC 803(18a)(a) provides:

"A complaint of sexual misconduct made by the witness after the commission of the alleged misconduct at issue [is not excluded by OEC 802]. Except as provided in paragraph (b) of this subsection, such evidence must be confined to the fact that the complaint was made."

defendant's guilt. It argues that, when viewed in context, Jenkins' testimony gave no additional information that was critical to the state's proof and that it merely "fleshed out" the victim's demeanor during the interview. We agree with the state that Jenkins' testimony that the victim was "spontaneous," "eager to disclose" and "very articulate," described the victim's demeanor while making the statements and were not comments on the victim's credibility that were so prejudicial as to require reversal. *See State v. Isom*, 306 Or 587, 761 P2d 524 (1988); *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983). However, we do not agree that Jenkins testimony "merely fleshed-out" other evidence.

The state points specifically to evidence from the victim's day-care provider and her daughter that they had seen the victim "humping" her younger brother and masturbating, exposing herself to defendant, and that they had seen defendant on several occasions with her hand up the victim's dress for a few minutes. They also testified that the victim had said that defendant had touched her going to and from the day-care provider's house but admitted that the victim said that defendant touched her "in her pee-pee and on her bottom" at night to see if she was wet.

The state cites Bays' testimony and medical findings. Bays testified that, during the course of the exam, she asked the victim if anyone had touched her or hurt her in the genital region, and the victim

"spontaneously said a rather long statement. She said: 'Late at night when I was asleep and [defendant] would come home from work, and she would come downstairs and touch my pee-pee to see if I peed my bed or pooped my bed.' "

The victim told Bays that defendant touched her clitoris, labia, the lower abdomen and anus with her finger, and the victim moved her index finger in and out of her anal area, as an example of how defendant touched her there. Bays' medical examination of the victim revealed hymenal bands, but Bays concluded that the bands did not conclusively establish abuse.

The day-care providers' and Bays' testimony described the victim's sexualized behavior and statements that the victim had made, which added little to the victim's

trial testimony that defendant had touched her to see if she was wet. It was Jenkins' testimony that provided the evidence that the touching was abusive. She testified that the victim had told her that defendant "comes in her bedroom at night and puts her finger inside her pee-pee while she is asleep" and that the victim said she didn't "like it, it hurts and I tell [defendant] not to do it." Jenkins described how the victim put the mother doll's hand into the vaginal opening of the child doll. We cannot agree with the state that that testimony was merely cumulative and "unnecessary to the jury's verdict." Defendant is correct that Jenkins provided a " 'full story' for the state not available to it through any other witness." It was error to allow Jenkins' testimony as substantive evidence, and, because we cannot say that the error was unlikely to have had any effect on the jury's verdict, the error requires reversal.

■　　　　Under the scope of the Supreme Court's remand, we address defendant's final assignment of error. She argues that the trial court abused its discretion in failing to allow the defense to contact jurors. Her motion was made after one of the jurors learned of the perjury committed by Jenkins and contacted defense counsel to express concern about the impact of the perjury on the jury's decision. We find no abuse of discretion, particularly in the light of the Supreme Court's holding that defendant's post-trial discovery of the extent of Jenkins' perjury did not qualify as newly discovered evidence so as to warrant a new trial.

Reversed and remanded for a new trial.