Argued and submitted September 23, 1998, reversed and remanded January 6, petition for review denied May 25, 1999 (328 Or 595)

## STATE OF OREGON,
*Appellant,*

*v.*

## JAMES CHRISTOPHER SWETT,
*Respondent.*

### (73321; CA A99848)

972 P2d 909

Holly A. Vance, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Interim Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

On appeal, the state seeks reversal of the trial court's pretrial orders granting defendant's motion *in limine* to exclude the victim's testimony and dismissing the charge of harassment against defendant. ORS 138.060(1), (3). We reverse.

After police responded to a domestic disturbance at their residence, defendant was charged with harassing his girlfriend. ORS 166.065.[1] The girlfriend provided oral and written statements to the police about what had occurred before they arrived. Before trial, defendant moved to exclude the girlfriend's testimony. Defense counsel represented to the trial court that the girlfriend had recanted her statements incriminating defendant on a videotape shown to the state and in a statement made under oath. Defense counsel argued that because the state was aware of the recantations, it could not call the girlfriend as a witness because to do so could only be for the purposes of impeachment. The state countered that it was entitled to call the girlfriend as a witness to testify to facts that were not the subject of her recantations and that it could prove its case, in part, through excited utterances made by the girlfriend to the police when they arrived. Defendant disputed that the girlfriend's statements to the police were excited utterances. The trial court ruled that the girlfriend could not testify. When the state insisted on pursuing the case to trial, the trial court dismissed the case in the interests of justice under ORS 135.755.

■ First, the state assigns error to the trial court granting defendant's motion *in limine* to exclude the victim's testimony. Second, the state assigns error to the trial court's dismissal of the charge. We review the trial court's decision to dismiss under ORS 135.755 for an abuse of discretion with the recognition that our past decisions have held that a court's discretion under ORS 135.755 is circumscribed and is properly exercisable only under particular circumstances.

---

[1] ORS 166.065(1) provides, in part:

"A person commits the crime of harassment if the person intentionally:

"(a)  Harasses or annoys another person by:

"(A)  Subjecting such other person to offensive physical contact[.]"

*State v. Stough*, 148 Or App 353, 355, 939 P2d 652, *rev den* 326 Or 58 (1997). We turn initially to the text and context of the statute for guidance in determining the boundaries of the trial court's discretion. ORS 135.755 provides: ·

> "The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order the proceedings to be dismissed. The reasons for the dismissal shall be set forth in the order, which shall be entered in the register."

In *State ex rel Penn v. Norblad*, 323 Or 464, 467-68, 918 P2d 426 (1996), the court observed that:

> "[w]hat is now ORS 135.755 traces its antecedents directly to the Deady Code. In 1864, the legislature enacted the predecessors of ORS 135.745 to 135.757 together in their own subchapter, titled '[d]ismissal of the action before or after indictment, for want of prosecution or otherwise.' *Code of Criminal Procedure*, ch XXXI, §§ 319-25, at 496-97 (1864), *codified in* General Laws of Oregon, ch XXX, §§ 319-25, at 382-83 (Deady and Lane 1843-72). * * * The predecessor of ORS 135.755 contained the same operative wording as that statute does today, and the sections surrounding it in the 1864 subchapter related only to pretrial matters, such as delay in indicting a defendant or in bringing a defendant to trial."

In addition, ORS 135.757 now provides that, "[t]he entry of a nolle prosequi is abolished, and the district attorney cannot discontinue or abandon a prosecution for a crime, except as provided in ORS 135.755." In that context, ORS 135.755 indicates a legislative preference for prosecution of accusatory instruments and that dismissal be exercised under limited circumstances.[2]

---

[2] At common law, there was no authority for a trial court to dismiss a charging instrument before trial over the objection of a public prosecutor. Charles E. Torcia, ed., 3 *Wharton's Criminal Procedure* § 445, 926-33 (13th ed 1991). As one treatise explains:

> "In most jurisdictions, however, the decision to dismiss a pending prosecution can no longer be made by the prosecutor alone; the nolle prosequi as known to the common law has been abolished. The manner in which and the limitations under which the dismissal power may be exercised vary[.]" *Id.* at 928-29 (footnote omitted).

Appellate courts in other jurisdictions have struggled with the difficulties of reviewing *sua sponte* dismissals under similar statutes. *See, e.g., State v. Sauve*, 164 Vt 134, 666 A2d 1164 (1995); *State v. Brumage*, 435 NW2d 337 (Iowa 1989); *State v. Starrish*, 86 Wash 2d 200, 544 P2d 1 (1975).

■     In *Stough*, we described some of the limitations on the exercise of discretion by trial courts that exist under ORS 135.755. We said,

> "[t]he decision to dismiss all or part of an accusatory instrument generally involves consideration of the defendant's substantive and procedural rights in the case and the public's interest in having the law enforced. In a number of cases we have held that, in the absence of any constitutional violations, inconvenience, expense or delay caused to a defendant by the prosecution of a criminal charge is an insufficient ground to warrant dismissal." 148 Or App at 356 (footnote omitted).

Similarly, we have held that, in the absence of any constitutional violations, dismissal is not proper merely because the state intends to proceed with a weak case. *State v. Hadsell*, 129 Or App 171, 175, 878 P2d 444, *rev den* 320 Or 271 (1994).

Apparently, the trial court dismissed this case because it believed that after the state put on its case in chief, defendant would be entitled to a directed verdict of acquittal. The trial court explained:[3]

> "Okay. And then, if I deny the motion [to exclude the girlfriend's testimony], I would tell you that I would probably allow the witness to testify, and if she recants her prior statements, then I would preclude you from impeaching her, based upon your prior knowledge that that's what she intends to say. And it crosses my mind that, if I have done that, and she's been impeached, the impeachment is only for the purposes of her truthfulness or veracity, not for the substantive nature of the contents of that prior statement. At the end of the state's case, I would be found with a judgment of acquittal motion that I probably would grant, in that there would have been no substantive evidence of the offense other than what she said didn't happen."

■     Although the trial court was well-intentioned, it exercised its authority erroneously under ORS 135.755.

---

[3] ORS 135.755 requires the trial court to state the reasons for dismissal in the order, and we have held that the trial court must articulate substantial reasons for the dismissal. *See, e.g., State v. Sanchez*, 136 Or App 329, 334, 901 P2d 978, *rev den* 322 Or 362 (1995); *State v. Adams*, 86 Or App 139, 144, 738 P2d 988, *rev den* 304 Or 405 (1987).

Defendant has not pointed to any violation of his constitutional rights. We are aware of no authority for the premise that the state must make an affirmative showing pretrial that it can prove its case. In *State v. Leland*, 190 Or 598, 630, 227 P2d 785 (1951), *aff'd sub nom Leland v. Oregon*, 343 US 790, 72 S Ct 1002, 96 LEd 1302 (1952), the court held that as long as the defendant's plea of not guilty stands, the state has the right to prove its case "up to the hilt and to choose its own way of doing so * * *, subject only to the rules of evidence and the standard of fair play which should govern the prosecution of every criminal case." In *State v. McFerron*, 52 Or App 325, 333, 628 P2d 440, *rev den*, 291 Or 368 (1981), we held that "[t]he public interest in giving the state a fair opportunity to present its case to a constitutionally-formed jury is of such importance that the inability to afford the state that right * * * constitutes such a 'manifest necessity' for the declaration of mistrial * * *." Because of the public's interest in the prosecution of crimes and the absence of compelling circumstances that invoke issues of fairness in the administration of justice, we conclude that the trial court erroneously dismissed this case.

The state's remaining assignment of error concerns whether the trial court erred in granting defendant's motion *in limine* to exclude the victim's testimony. OEC 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." In *State v. Warren*, 88 Or App 462, 466, 745 P2d 822 (1987), *rev den* 303 Or 45 (1988), we said:

> "The use of impeachment evidence against one's own witness is not without limitations. The limitations are discussed in cases under FRE 607, which is identical to OEC 607. For example, in *United States v. Hogan*, 763 F2d 697, [*opinion withdrawn in part on other grounds* 771 F2d 82 (5th Cir 1985), *aff'd* 779 F2d 296 (1986)], a witness recanted his confession before he was called to the stand. The prosecution informed the jury of that in its opening statement and told the jury that it intended to use the confession as impeachment. Outside the presence of the jury, the witness recanted a second time, under oath. The Court of Appeals held that the prosecution could not introduce the confession, because it had made it clear that the witness was being called in order to get the confession in:

> " 'The government may call a witness it knows to be hostile, and it may impeach that witness's credibility. Surprise is not a necessary prerequisite to impeaching one's own witness under FRE 607. The prosecution, however, may not call a witness it knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule.' 763 F2d at 702. (Citations omitted.)" (Emphasis in original.)

*See also* Laird C. Kirkpatrick, *Oregon Evidence*, 329-32 (3d ed 1996) (identifying potential abuses of OEC 607 and citing authority for limits on impeaching a party's own witness with prior inconsistent statements).

■ Here, the state was aware that the girlfriend has recanted her previous statements. Even so, the limitations to OEC 607 alluded to in *Warren* are not applicable if her statements to the police are otherwise admissible as excited utterances under OEC 803(2). In that instance, the state would not be calling her solely for the purpose of impeaching her trial testimony with otherwise inadmissible hearsay evidence. Under OEC 104, the trial court was authorized to hold an evidentiary hearing to determine whether the girlfriend's statements to the officers were admissible as excited utterances. That hearing was never held, so the trial court's implicit ruling that the girlfriend's statements were inadmissible is not reviewable.

Ordinarily, the failure to make a record defeats an appeal unless the appellant was refused the right to make the record. Here, the state told the trial court,

> "There are excited utterances by the character and nature of the descriptions of the victim by the police officers. Certainly she can testify as to those and would be asked about those excited utterances, and the—if necessary, we would—I believe she would be more than forthright about what her condition was at that time, but if necessary the state would be willing to make an offer of proof out of court by the officers for them to talk about their observations of her condition, and that would be established that this was an excited state she was in when she made these statements. * * *"

Nonetheless, the trial court ruled without permitting the state to make its offer of proof. That was error.

The order dismissing the charge under ORS 135.755 is reversed. On remand, the trial court is to permit the state to make its offer of proof and then rule on defendant's objection. Even if there are no excited utterances, the state may be able to elicit testimony from the girlfriend that would not be impeachment evidence. *See State v. Arnold*, 133 Or App 647, 893 P2d 1050 (1995). In sum, nothing in defendant's present objection would properly limit the state's ability to offer those portions of the girlfriend's testimony that are outside the boundaries of OEC 607 and its limitations.

Reversed and remanded.